**UNITED STATES of America,
Appellant,**

v.

**Luis PEREZ, a/k/a "Coco,"
Defendant-Appellee.**

**No. 959, Docket 84–1049.**

United States Court of Appeals,
Second Circuit.

Argued March 8, 1984.
Decided May 3, 1984.

---

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City (John M. McEnany, Marc J. Gottridge and Paul L. Shechtman, Asst. U.S. Attys., New York City, of counsel), for appellant.

Jed S. Rakoff, New York City (David M. Dubin and Andrea J. Berger, Mudge, Rose, Guthrie, Alexander & Ferdon, New York City, of counsel), for defendant-appellee.

Before TIMBERS and CARDAMONE, Circuit Judges, and TENNEY, District Judge.[*]

CARDAMONE, Circuit Judge:

This is an expedited appeal by the United States from orders entered January 12 and February 1, 1984 in the United States District Court, 579 F.Supp. 652, for the Southern District of New York (Weinfeld, J.). The orders suppressed the post-arrest statements of Luis Perez, a suspect in a conspiracy to distribute heroin, who had moved to suppress the confessions claiming that they were the product of unreasonable pre-arraignment[1] delay. The government stated in response that the delay was necessary because available manpower was used to effect a search of a co-defendant's apartment. Following an evidentiary hearing the district court judge granted the motion to suppress without reaching or determining the question of whether the statements were involuntary.[2]

Involved on this appeal is a significant question with respect to the construction of 18 U.S.C. § 3501 (1982). More specifically, we must determine whether discretion exists under the terms of § 3501(c) for a trial court to suppress a suspect's confession solely on account of delay—exceeding six hours from arrest to confession—where it finds such delay not reasonable. Because we conclude that the statute grants a district judge this discretion, we affirm.

### I Facts

Viewed in a light favorable to the defendant, see United States v. Oates, 560 F.2d 45, 49 (2d Cir.1977), the record reflects the following facts. On Friday, October 28, 1983 at 3:25 p.m. on Manhattan's Lower East Side, federal Drug Enforcement Administration (DEA) agents arrested defendant Perez and two other men suspected of selling heroin. The agents transported them, together with a fourth suspect arrested earlier that day, to the DEA offices at 57th Street and Eleventh Avenue. Upon arrival there the suspects were advised of their Miranda rights and "processed," i.e., fingerprinted, strip-searched and photographed. At about 4:45 p.m., Perez was

---

[*] Honorable Charles H. Tenney, United States District Court for the Southern District of New York, sitting by designation.

1. We recognize that Rule 5(a) does not speak of "arraignments." Courts, like members of the bar generally, continue to use the term, undoubtedly out of habit. When used herein, the term refers to the suspects' initial presentment to a magistrate contemplated by Rule 5.

2. Judge Weinfeld originally set trial for February 2, 1984. When, on February 1, he denied the government's motion to reconsider his suppression order, the government promptly filed its notice of appeal. When the district court declined to stay the trial, the government petitioned for a writ of mandamus. We granted mandamus relief on February 2, scheduled this expedited appeal, and stayed the trial on the government's certification under 18 U.S.C. § 3731 (1982) that in the considered judgment of the Solicitor General and the United States Attorney for the Southern District of New York, Perez' confession is substantial proof of a fact material in the proceeding.

placed in a holding cell, while the agents turned their attention to obtaining a search warrant for the premises of Warren Toney, another suspect in the alleged drug ring. Meanwhile, Camille Colon, one of the agents involved in Perez' arrest, left the DEA offices and arrived at Assistant United States Attorney (AUSA) Daniel Perlmutter's office at Foley Square at 5:00 p.m. Perlmutter was assigned to draft the warrant application, and at 6:15 p.m. United States Magistrate Joel Tyler issued a search warrant for Toney's apartment.

While Perez waited in his holding cell at 57th Street, no fewer than seven DEA agents were sent to Toney's apartment. There, they seized drug paraphernalia, ledgers, jewelry and two handguns, and arrested Toney and another suspect, Jorge Negron. The agents took Toney and Negron to the DEA office for processing.

At 10:00 p.m., after Toney and Negron had been processed, the agents transported Perez and the other defendants to the United States Attorney's office at Foley Square. Colon informed AUSA Perlmutter that Perez had not given a statement. By this time on Friday night there were no U.S. Magistrates available, so Perez could no longer be arraigned. Although Perez had not yet received court-appointed counsel from the Legal Aid Society (such takes place at the initial appearance before the Magistrate), the decision was made to "interview" him. The AUSA candidly testified at the suppression hearing that the purpose of the pre-arraignment interview—used routinely by the U.S. Attorney for the Southern District of New York—was to obtain a confession. At 11:20 p.m., Perlmutter interviewed Perez, again advising him of his *Miranda* rights. During this interview Perez made a lengthy inculpatory statement describing his activities earlier that day and his involvement with the other suspects. Perez then spent the night in a cell at the Metropolitan Correctional Center (MCC).

At 9:00 the next morning, a Saturday, the defendant was brought from the MCC to the U.S. Courthouse for arraignment.

Throughout the morning, he was processed by the U.S. Marshals for the purpose of obtaining the same "pedigree" information he had provided to the DEA agents the previous day. He was interviewed by a pre-trial services officer and waited while AUSA Perlmutter interviewed the other four suspects (Perlmutter had not done so the previous evening). Sometime early Saturday afternoon, Perez was taken to a courtroom where for the first time he consulted with counsel, in this case the Legal Aid lawyer assigned to represent, for purposes of arraignment only, all six individuals arrested. Meanwhile, during Saturday morning and early afternoon, Perez had made two further inculpatory statements regarding the lucrative nature of his "work" and his desire to "catch up with" a suspected informant. It was not until 2:30 p.m., 23 hours after his arrest, that the defendant first appeared before a magistrate.

At the arraignment, the magistrate again advised Perez of his rights and of the government's charges against him, set his bail and found him eligible for appointment of counsel. After his arraignment Perez made no further statements to the prosecution. Instead, he moved to suppress his confessions on two grounds: first, that they were not voluntary because he was a heroin addict who, deprived of that drug, was suffering withdrawal symptoms during the interview; and, second, that the confessions were the fruit of an unlawful pre-arraignment delay.

■ In a written opinion, Judge Weinfeld expressly declined to address the issue of whether Perez' confessions were voluntary and granted the defendant's motion to suppress solely on what he concluded was the government's "unnecessary and unreasonable" delay in arraigning Perez. Analysis of the applicable statutes, rules and decisional law demonstrates that a district court judge may exclude a confession obtained where a pre-arraignment delay unreasonably extends beyond six hours from the time of arrest. Because there is ample support for the district court's findings of

fact and conclusion of law that the government's delay in this case was not reasonable, we affirm his orders suppressing Perez' confessions. Our reasons follow.

## II  *History*

Fed.R.Crim.P. 5(a) was enacted in 1946. Today's Rule 5(a) provides in pertinent part:

An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant *shall take the arrested person without unnecessary delay* before the nearest available federal magistrate or, in the event that a federal magistrate is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. § 3041. (emphasis added).

Rule 5(a) is a "restatement, without substantive change, of several prior specific federal statutory provisions." *Mallory v. United States*, 354 U.S. 449, 452, 77 S.Ct. 1356, 1358, 1 L.Ed.2d 1479 (1957). While the proper remedy for a violation of Rule 5(a) has been the source of considerable debate over the years, as the discussion below indicates, Rule 5(a) remains in full force, having been most recently amended in other respects in 1972.

Even before the adoption of the federal criminal rules, the Supreme Court, pursuant to one of Rule 5(a)'s predecessor statutes, created an exclusionary remedy for violations of a defendant's right to a prompt arraignment. In *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), the Court in an opinion by Justice Frankfurter suppressed the defendants' pre-arraignment confessions on the sole ground that the government failed to present them promptly to a magistrate. It appeared to the Court that the McNabb brothers had not been arraigned for two days following their arrest, during which time they had been strenuously interrogated. The Court did not suppress their confessions on constitutional grounds, but chose instead to bottom its holding on the exercise of "its supervisory authority over the administration of criminal justice in the federal courts." *Id.* at 341, 63 S.Ct. at 613.

Justice Frankfurter again wrote, this time for a unanimous court, in *Mallory v. United States, supra.* There, the government delayed a suspect's arraignment for over seven hours although a magistrate was readily available, and the Court held that suppression was required. 354 U.S. at 455, 77 S.Ct. at 1360. The rule of exclusion when the government "unnecessarily" delayed arraignment became known as the *McNabb-Mallory* rule.

In 1966 the Supreme Court handed down its landmark decision holding that a defendant has certain constitutional rights of which he must be informed before any interrogation may proceed. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda* created a prophylactic rule requiring suppression in certain cases without the need to find "the defendants' statements to have been involuntary in traditional terms." *Id.* at 457, 86 S.Ct. at 1618.

As a result of the public debate that ensued, Congress in 1968 enacted Title II of the Omnibus Crime Control and Safe Street Acts, 18 U.S.C. § 3501. Section 3501 provides in part:

(a) In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

(b) The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession,

including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession. The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

(c) In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate or other officer empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: *Provided,* That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer.

Since this case hinges on our interpretation of section 3501, in particular subsection (c), we next examine that provision.

### III  *Suppression of Confessions Under Section 3501*

On this appeal, the government raises numerous challenges to the district court's application of 18 U.S.C. § 3501. Foremost among these is the contention that delay alone does not require suppression but is merely one of the factors to be considered in evaluating the voluntariness of a confession. In support of this proposition, the government cites numerous cases including *United States v. Halbert,* 436 F.2d 1226 (9th Cir.1970), an opinion that purported to present an exhaustive analysis of section 3501's legislative history.

The government has misstated the issue. Perhaps it is true that delay alone does not *require* suppression, but as the following analysis of the statutory language, legislative history and case law bears out, a delay of greater than six hours *may* by itself be grounds for suppression unless the delay is found to be reasonable.

### A.  The Clear Language of Section 3501

The Supreme Court has repeatedly stressed that the clear words of a statute govern its interpretation. *Lewis v. United States,* 445 U.S. 55, 60, 100 S.Ct. 915, 918, 63 L.Ed.2d 198 (1980); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); *Southeastern Community College v. Davis,* 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979). "[A]bsent clear evidence of a contrary legislative intention, a statute should be interpreted according its plain language." *United States v. Apfelbaum,* 445 U.S. 115, 121, 100 S.Ct. 948, 952, 63 L.Ed.2d 250 (1980). *See also Bread Political Action Comm. v. Federal Election Comm.,* 455 U.S. 577, 102 S.Ct. 1235, 71 L.Ed.2d 432 (1982); *North Dakota v. United States,* 460 U.S. 300, 103 S.Ct. 1095, 75 L.Ed.2d 77 (1983).

Subsection (a) of section 3501 states that a confession is admissible in evidence if voluntarily given. Subsection (b), in turn, lists five factors to be considered by the trial judge in determining the issue of voluntariness—one of the factors being the time elapsing between arrest and arraignment. If these were the only provisions of the statute, the government might have a case for contending that the sole statutory basis for excluding a confession is involuntariness. In light of subsection (c), however, such a conclusion is unsupportable.

■ Where each of three conditions is met, subsection (c) plainly states that delay in bringing a defendant before a magistrate cannot be the sole basis for inadmissibility of a confession. The three conditions are: first, the confession is found by the trial judge to have been voluntary, second, the weight to be given the confession is left to the jury and, third, such confession was made within six hours of the arrest. The clear meaning of this provision is that delay alone *permits* suppression when any of these requisites are *not* met. For example, if a defendant confesses more than six hours after the time of arrest and has not yet been arraigned, the delay in and of itself may justify suppression. Of course, subsection (c) adds a very important proviso: a delay of greater than six hours will not be an independent ground for suppression when the trial court finds that such delay was reasonable under the circumstances.

To summarize, section 3501 advances two distinct bases for excluding a confession. The first, as stated in subsection (a), is a lack of voluntariness. The second, according to subsection (c), is delay of greater than six hours found not to be reasonable. Although the government protests this proposition and asserts that voluntariness is the sole concern, any reading of section 3501 that disputes unreasonable delay as an additional independent basis for suppression reads subsection (c) out of the statute. *See* 3 J. Wigmore, *Evidence* § 862(a), at 623 (Chadbourn rev. 1970) (section 3501 leaves the *McNabb-Mallory* rule

intact with regard to confessions obtained after a six hour delay not found to be reasonable). *Accord,* 8 J. Moore, *Moore's Federal Practice* ¶ 5.02[1], at 5–9 (1983).

Congress, in subsection (c), specifically used the term "inadmissible solely because of delay." If voluntariness were the only basis upon which admissibility turned under section 3501, then the statute would have contained language to the effect that "a confession shall not be deemed *involuntary* solely because of delay." In view of the fact that Congress coupled the word "inadmissible" with "delay," the meaning of subsection (c) must be that delay may serve as the basis for a separate, independent exclusionary remedy.

Even more telling is the notion that if voluntariness were the only ground for suppression, as the government suggests, the language in subsection (c) calling for a determination of the length and reasonableness of the delay would be superfluous. Delay, as it relates to the defendant's free will under subsection (b) is unquestionably relevant; however, the government's excuses for the delay have no logical or legal relevance to the defendant's voluntariness. The proviso in section 3501(c) is clearly aimed at permitting an evaluation of the government's reasons for the delay; yet to what end if the ultimate determination is the delay's effect on the defendant? Similarly, the third condition of admissibility under subsection (c) sets forth a definite, six hour "time limitation." As one court has noted:

If voluntariness were taken as the sole standard of admissibility, and if the confession were found by the trial judge to have been made voluntarily, condition (3) [the six-hour time limitation] would be wholly inoperative. On the other hand, if voluntariness were taken as the sole standard of admissibility, and if the confession were found by the trial judge not to have been made voluntarily, condition (3) would also be wholly inoperative. Thus, condition (3) can be given effect only if it is recognized as a separate and

distinct factor, wholly independent of the voluntariness of the confession.

*United States v. Erving,* 388 F.Supp. 1011, 1016 (W.D.Wis.1975) (footnote omitted).[3] If courts could not use unreasonable delay as an independent exclusionary means, the six hour time limitation would have no meaning or practical effect; nor would the requirement of Fed.R.Crim.P. 5(a).

Subsection (c), therefore, stands separate and whole and rests on equal footing with the voluntariness provisions, subsections (a) and (b). As the ensuing discussion will make clear, the legislative history supports this reading of subsection (c), and the case law does not refute it.

### B. *Halbert* View

The government relies heavily on *United States v. Halbert, supra,* where the Ninth Circuit examined the legislative history of 18 U.S.C. § 3501, Pub.L. 90–351, Title II, § 701(a), 82 Stat. 197, 210. The *Halbert* court did not attempt to explain the presence of much of subsection (c)'s language in concluding that it "merely removes some

of the discretion given to the trial judge under subsection 3501(b) in determining voluntariness." 436 F.2d at 1234. Accordingly, the court held that the district court was not required to suppress a confession obtained during a pre-arraignment delay which exceeded the six-hour time period set out in section 3501(c).

For its conclusions, the court in *Halbert* apparently relied exclusively on the Senate Report on § 3501, S.Rep. No. 1097, 90th Cong.2d Sess., *reprinted in* 1968 *U.S. Code Cong. & Ad.News* 2112.[4] S.Rep. No. 1097 is dated April 29, 1968, and was prepared to accompany the Senate Judiciary Committee's version of Pub.L. 90–351, then styled as Senate Bill No. S917. The Senate bill contained a predecessor to the current version of section 3501(c). The predecessor provided simply:

(c) In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while

---

**3.** In *Erving,* Judge James E. Doyle filed a persuasive opinion in which he analyzed section 3501(c) in the context of an eleven hour delay. Judge Doyle rejected the "pure voluntariness" approach of *United States v. Halbert, supra,* based on his reading of the plain language of section 3501. We agree for the most part with Judge Doyle's analysis giving effect to § 3501(c), especially in the light of our examination of the legislative history.

> Professor Wright states:
> "In the absence of some other indication of involuntariness, a confession obtained within six hours immediately following arrest is admissible and a confession obtained after a delay of more than six hours may be admitted if the delay is found reasonable in the light of the time and distance required to take the defendant before the nearest available magistrate or other officer."
> 1 *Fed. Practice & Procedure, Criminal 2d, supra,* § 72, at 90. (footnote omitted). Though Professor Wright generally seems to espouse the *Halbert* view that a finding of involuntariness is necessary to suppress in every case, he concedes that "[a]s a matter of statutory construction there is a good deal to be said for this [approach of *United States v. Erving, supra*]." *Id.* at 115 n. 42.
> Professor Moore interprets section 3501(c) as precluding suppression of a confession "if three conditions are met," including the condition

that "the confession must be made within six hours immediately following the suspect's arrest [as extended by the reasonable delay proviso of section 3501(c) ]." 8 J. Moore, *Moore's Federal Practice* ¶ 5.02[2] at 5–12 (1983).

**4.** The Senate Report clearly indicates that a number of Congressmen believed the bill as originally drafted would overrule both *McNabb-Mallory* and *Miranda.* The Report notes the goal of the legislation "to offset the harmful effects of the *Mallory* case." 1968 *U.S. Code Cong. & Ad.News* at 2124. Attorney General Lynch of California felt that "one portion of the bill will eliminate the rule of *McNabb* ... and *Mallory.*" *Id.* at 2126. He admitted, however, that "some incentive should be given Federal officers to obey the prompt-arraignment statutes." *Id.* at 2126. The Congressmen considered the possibility that the bill as it then read might be unconstitutional under *Miranda.* The report concludes with a prediction that a change in the composition of the Supreme Court might result in an overruling of *Miranda. Id.* at 2137–38.

Whatever the hopes of certain members of Congress, history has not proved them correct. The Supreme Court has not overruled *Miranda v. Arizona,* nor have recent cases indicated any desire to do so. *See, e.g., Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Rhode Island v. Innis,* 446 U.S. 291, 298, 100 S.Ct. 1682, 1688, 64 L.Ed.2d 297 (1980).

such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a commissioner or other officer empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury. S. 917, 90th Cong.2d Sess. (April 29, 1968).

Had section 3501(c) been enacted in the above form, voluntariness would have been the ultimate consideration for admissibility of every pre-arraignment confession, and the Senate Report logically focused solely on the voluntariness criterion. The panel in *Halbert* did not consider the legislative history revealing that the current version of subsection (c) was added on the Senate floor, after the bill had already cleared the Senate Judiciary Committee. The statement setting forth minority views in the Senate Report noted that, prior to the last minute amendments, subsection (c) of the statute contained no time limit whatsoever. *Id., reprinted in* 1968 *U.S.Code Cong. & Ad.News* at 2216. (Minority views of Messrs. Tydings, Dodd, Hart, Long of Missouri, Kennedy of Massachusetts, Burdick, and Fong on Title II of S. 917.). The *Halbert* court found this statement to be evidence "that the minority of the committee that proposed the legislation did not think that confessions given more than six hours after arrest would be automatically inadmissible under the bill." *United States v. Halbert, supra,* 436 F.2d at 1237.

The language containing a six-hour limitation was added on the Senate Floor on May 21, 1968 in an amendment sponsored by Senator Scott. *See* 114 Cong.Rec. 14184–86. Like many of his colleagues, Senator Scott was concerned that subsection (c) was open-ended, and might be viewed as permitting police interrogations of unlimited duration. Thus, as originally proposed by Senator Scott, the amendment would have placed an absolute six-hour

limitation on delays in arraignment. *Id.* That amendment was approved without a roll-call vote. The proviso of § 3501(c) as enacted states, however, that any delays in excess of six hours are to be disregarded so long as they are found by the judge to have been reasonable. The precise origin of this proviso is not clear from the legislative history materials we have reviewed. It was apparently inserted after Senator Scott's original amendment, which does not appear to have contained such a proviso. In any event, when the Senate approved HR5037 (the House version of the Bill) by an overwhelming majority on May 24, 1968, the bill contained the present text of § 3501(c). *See* HR5037 (May 24, 1968). The bill then proceeded to the House, which approved it on June 6, 1968 without resorting to a Conference Committee. Several representatives noted that the bill before them was not the version proposed by the Senate Judiciary Committee, but one reflecting amendments on the Senate Floor. *See, e.g.,* 114 Cong.Rec. at H 4564 (daily ed. June 5, 1968) (statement of Rep. Ford); *id.* at H 4635 (statement of Rep. Poff); *id.* at H 4633 (statement of Rep. Anderson). As to the floor amendments made in late May of 1968, including the specific provision at issue in this case, the Senate Report of April 29, 1968 cited by the *Halbert* court was a rather weak reed on which to rely.

A number of courts and commentators have expressly relied on *Halbert's* "detailed" analysis of the legislative history of Title II. *See, e.g., United States v. Manuel,* 706 F.2d 908, 913 (9th Cir.1983); *United States v. Marrero,* 450 F.2d 373, 377 (2d Cir.1971), *cert. denied,* 405 U.S. 933, 92 S.Ct. 991, 30 L.Ed.2d 808 (1972) ("*Halbert* explores the legislative history of § 3501 in detail …."); 1 C. Wright, *Federal Practice and Procedure, Criminal 2d* § 74 (citing *Halbert* and other cases that relied on *Halbert*). *See generally* Annot., 12 A.L.R. Fed. 377 (1972 & Supp.1983) (citing cases).

For several reasons we decline to follow *Halbert's* construction of § 3501 insofar as it seems to require a finding of involuntariness in every case. First, as noted, it

failed to consider the only legislative history describing subsection (c); second, it did not discuss the plain language of that subsection; and, finally, the Ninth Circuit itself has not adhered consistently to the *Halbert* view of the statute. *Compare United States v. Manuel, supra,* 706 F.2d at 914 (holding that subsection (c) does not impose a six-hour maximum from arrest to arraignment when a confession can be obtained and instead requires a finding of involuntariness)[5] *with United States v. Sotoj-Lopez,* 603 F.2d 789 (9th Cir.1979) (*per curiam*) *and United States v. Stage,* 464 F.2d 1057 (9th Cir.1972) (*per curiam*) (both applying the *McNabb-Mallory* rule to suppress confessions where the delay in arraignment was unnecessary and unreasonable, not citing § 3501).

Section 3501 "must be read as a whole," *United States v. Marrero,* 450 F.2d at 378, and effect given, if possible, to each part of the statute. *Ginsberg & Sons v. Popkin,* 285 U.S. 204, 208, 52 S.Ct. 322, 323, 76 L.Ed. 704 (1932). As noted previously, only by reading subsection (c) as providing an independent basis for exclusion can effect be given to each part of the subsection.

### C. Judicial View of § 3501

Judicial interpretation of § 3501 has been somewhat murky. Numerous courts have addressed the issue of whether a delay beyond six hours *requires* suppression, and the government's brief here understandably cites those cases and even attempts to characterize the issue here in terms identical to the issue in those cases by arguing that delay alone does not *require* suppression. That is not the issue here, where the district court concluded not that it must suppress but that it had *discretion* to exclude the confessions based on the government's unnecessary and unreasonable delay in bringing Perez before a magistrate.

Since the enactment of § 3501, courts have routinely examined the "excusability"

of the delay in obtaining arraignment for the suspect, including the reasons advanced by the government for exceeding the six-hour time limitation. *E.g., United States v. Edwards,* 539 F.2d 689, 691 (9th Cir.), *cert. denied,* 429 U.S. 984, 97 S.Ct. 501, 50 L.Ed.2d 594 (1976) (in determining "voluntariness" court considers fact that "delay in arraignment was caused solely by a shortage of personnel and vehicles to transport the suspect a distance of 125 miles," citing *Halbert, supra*). *Accord, United States v. Mayes,* 552 F.2d 729, 734 (6th Cir.1977). In one case, remand was ordered because the lower court had failed to evaluate the government's reasons for the delay in reaching its voluntariness determination. *United States v. Keeble,* 459 F.2d 757 (8th Cir.1972), *rev'd on other grounds,* 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973); *See generally* 8 J. Moore, *Moore's Federal Practice* ¶ 5.02[6]. Courts have thus continued to apply a *McNabb-Mallory* analysis subsequent to the passage of § 3501 because, were voluntariness the sole consideration, the necessity of the delay would be entirely irrelevant. *Cf. United States v. Shoemaker,* 542 F.2d 561, 563 (10th Cir.), *cert. denied,* 429 U.S. 1004, 97 S.Ct. 537, 50 L.Ed.2d 616 (1976) (noting that the reasons for the delay have no bearing on voluntariness). Recently, in *United States v. Rubio,* 709 F.2d 146 (2d Cir.1983), we found the delay justified, but to arrive at that conclusion we looked at factors which had no effect on the defendant's free will. Moreover, we expressed our concern about the delays, lest the government violate the defendant's "right to a prompt arraignment." *Id.* at 154.

We have addressed the thorny construction problem presented by section 3501(c) numerous times since its enactment. In this case, the district court concluded that none of these decisions precluded the suppression of Perez' confession under subsection (c). We agree. In *United States v.*

---

5. Curiously, the *Manuel* court found that, where the delay exceeds six hours, the "test is again involuntariness, but unreasonable delay in excess of six hours can by itself form the basis for a finding of involuntariness." *Id.* at 913. This construction of subsection (c) is illogical in view of that subsection's focus on the availability of a magistrate and transportation requirements, *i.e.,* excuses for the delay unrelated to the suspect's free will.

*Marrero, supra,* a case cited by both parties, the majority agreed with the trial judge that the delay exceeding six hours was reasonable. *Id.* at 378. Similar findings regarding the necessity and reasonableness of the delay provided the rationale for refusing to suppress a confession in four other cases. *See United States v. Burgos,* 579 F.2d 747, 750 (2d Cir.1978) (by implication); *United States v. Ortega,* 471 F.2d 1350, 1362 (2d Cir.1972), *cert. denied,* 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973); *United States v. Johnson,* 467 F.2d 630, 636 (2d Cir.1972), *cert. denied,* 410 U.S. 932, 93 S.Ct. 1382, 35 L.Ed.2d 595 (1973); *United States v. Collins,* 462 F.2d 792, 796 (2d Cir.), *cert. denied,* 409 U.S. 988, 93 S.Ct. 343, 34 L.Ed.2d 254 (1972). Thus, we have continued to recognize the viability of the *McNabb-Mallory* rule when the delay exceeds that permitted under § 3501(c). *See United States v. Rubio, supra,* 709 F.2d at 154. *See also United States v. Isom,* 588 F.2d 858, 862–63 (2d Cir.1978); *United States v. Duvall,* 537 F.2d 15, 23 n. 9 (2d Cir.), *cert. denied,* 436 U.S. 950, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976); *United States v. Smollar,* 357 F.Supp. 628 (S.D.N.Y.1972). Our sister circuits take varying views. *Compare United States v. Manuel, supra,* 706 F.2d at 908 (delay over six hours merely a voluntariness factor, citing *Halbert, supra* ); *United States v. Van Lufkins,* 676 F.2d 1189, 1193 (8th Cir.1982) (voluntariness is "key factor," citing S.Rep. No. 1097, *supra* ); *United States v. Shoemaker, supra,* 542 F.2d at 563 (voluntariness is sole test for admissibility) and *United States v. Hathorn,* 451 F.2d 1337, 1341 (5th Cir.1971) (delay beyond six hours merely a factor to consider on voluntariness, citing *Halbert, supra* ) *with United States v. Dodier,* 630 F.2d 232, 236 (4th Cir.1980) (referring to the "six hour exclusionary rule established by 18 U.S.C. § 3501(c)"); *United States v. Gaines,* 555 F.2d 618 (7th Cir.1977) (district court has discretion to exclude confession solely because of unreasonable delay; court to employ balancing test) *and United States v. Watson,* 591 F.2d 1058, 1061–62 (5th Cir.), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2414, 60 L.Ed.2d 1070 (1979) (applying section 3501(c) independently of subsection (b)).

### D. Summary

We believe that the addition of subsection (c) on the Senate floor effectively codified a limited *McNabb-Mallory* rule. Stated another way, section 3501 legislatively overruled the *McNabb-Mallory* rule only to the extent of (1) unreasonable pre-arraignment, pre-confession delays of less than six hours and (2) reasonable delays in excess of six hours.

Where there has been a determination, as here, that the delay in excess of six hours is unnecessary and not reasonable, nothing in our prior cases requires a finding that the confession obtained was "involuntary." Instead, reasonably construing the plain language of the statute in light of its legislative history leads ineluctably to the conclusion that discretion is vested in a district court judge to exclude a confession upon his finding that a delay of more than six hours was not reasonable. Because such a delay preceded the confessions in this case, we turn to the district court's determination that the delay was unnecessary and not reasonable.

### IV  *Unreasonable Delay*

In this case the district court specifically found a number of facts bearing on his ultimate conclusion that the delay was unnecessary and not reasonable. Those facts are of course governed by the clearly erroneous standard on this appeal. The court below found that as of 5:00 p.m. on Friday evening, after Perez had been processed at DEA headquarters, a magistrate was available to arraign him and advise him of his rights as required under Rule 5. Moreover, the court found that the magistrate had remained on duty until at least 6:25 p.m. It further found that the government had advanced no persuasive reason why it did not arraign Perez immediately. The government's shortage of manpower argument did not persuade the district court since more than six agents were assigned to the case, and the court found that

one of them could have taken Perez to the then available magistrate. Moreover, the court noted that Agent Colon had appeared herself before the magistrate to apply for the search warrant and there was no adequate explanation as to why Perez had not accompanied her to Foley Square for arraignment at that time. The AUSA's and DEA agents' desire to investigate other crimes is not a legitimate excuse for their failure to respect Perez' right to a prompt arraignment. *See, e.g., Adams v. United States,* 399 F.2d 574, 577 (D.C.Cir.1968), *cert. denied,* 393 U.S. 1067, 89 S.Ct. 723, 21 L.Ed.2d 710 (1969); *Ricks v. United States,* 334 F.2d 964, 968 (D.C.Cir.1964). Even if it were, the district court specifically found that the government, with its available manpower, could have both searched Toney's apartment and presented Perez to a magistrate in a prompt manner.

In sum, Judge Weinfeld was convinced that the DEA Agents had no legitimate excuse for not arraigning Perez promptly. Certainly we have no "firm conviction" that any of his findings of fact were erroneous. Moreover, the district court correctly concluded that the government's decision to ignore Perez as he waited in his DEA holding cell justifies suppression of Perez' confessions.

### V   *United States Attorney's Interview Procedure*

This determination obviates the need to address the defendant's contention that his first and most lengthy inculpatory statement "was the product of an intrinsically unlawful interview procedure of the United States Attorney's office." The interview procedure that is apparently practiced only by the United States Attorney's office for the Southern District of New York has received sharp criticism from a number of judges of this court. *E.g., United States v. Marrero, supra,* 450 F.2d at 379 (Friendly, C.J., concurring); *United States v. Duvall, supra,* 537 F.2d at 23 n. 9. *See generally United States v. Restrepo-Cruz,* 547 F.Supp. 1048 (S.D.N.Y.1982). We remain troubled by the practice, not only because of its inherent compulsion implicating a

defendant's Fifth Amendment *Miranda* rights but, perhaps more importantly, because of its potentially adverse impact on the Sixth Amendment rights of indigent suspects. *Cf. United States v. Mohabir,* 624 F.2d 1140 (2d Cir.1980) (post-indictment interview prior to arraignment and assignment of counsel violates suspect's Sixth Amendment right to counsel). The delay occasioned by the interview process, which was conceded by the AUSA here to have been designed to afford defendant an opportunity to confess, puts the indigent defendant at a comparative disadvantage. Unlike a wealthier suspect who may immediately retain counsel following arrest, the indigent suspect is without benefit of counsel until his arraignment.

We are mindful of the cogent reasons given for the existing interview procedure and the positive benefits claimed to law enforcement. Yet, the procedure generally envisions a "minimal delay" in time of presentment and specifically provides that where an interview may mean the difference between same day or following morning presentment, the interview "should be foregone." The road to presentment before a magistrate for one accused of a crime should not be paved only with good intentions. Here the attempt to justify the 23 hours that elapsed from Perez' arrest on Friday afternoon to his presentment Saturday afternoon pays lip service to the United States Attorney's policy, supporting it by words but not by deeds. Nevertheless, we emphasize that we do not hold today that such a procedure, if carefully applied, is unlawful or unconstitutional. In the future the district courts will be required to rule on the reasonableness in individual cases of any pre-arraignment delays exceeding six hours.

### CONCLUSION

The district court's orders suppressing Perez' confessions are affirmed.