**UNITED STATES of America**

v.

**John J. PALACIO.**

**Crim. No. B–89–64 (TFGD).**

United States District Court,
D. Connecticut.

Feb. 27, 1990.

Theodore Heinrich, for plaintiff.

William Bloss, New Haven, Conn., for defendant.

## RULING ON MOTION TO SUPPRESS STATEMENTS

DALY, District Judge.

Defendant John Palacio has moved to suppress the statements he made during custodial interrogation, arguing that the government unreasonably delayed presenting him before a magistrate and that neither his waiver of constitutional rights nor his resulting confession was voluntary. This Court's findings of facts and conclusions of law are as follows.

### FINDINGS OF FACT

On October 25, 1989 co-defendant Oscar Garcia and an undercover officer of the New York Drug Enforcement Task Force ("NYDETF") negotiated for the purchase of a kilogram of cocaine. On October 30, 1989, they agreed that Garcia would deliver and the agent would purchase the cocaine the following day in a rest area at Exit 22 beside the Connecticut Turnpike. They spoke again by telephone on October 31, 1989 and confirmed that the transaction would take place that afternoon.

Just before noon on October 31, 1989, DEA agents observed Garcia and another man enter Garcia's Bridgeport residence. Garcia and the other man, who had arrived at the apartment earlier in the morning, had left the apartment, stopped at several stores, and returned. Shortly afterwards, Palacio arrived by automobile. Garcia met Palacio outside the apartment and the two of them entered it. Around 1:00 p.m., Garcia and Palacio left the residence and drove away in Garcia's car, apparently leaving behind the third man in the apartment.

In anticipation of an arrest, twelve agents and officers assembled at the rest area around 1:00 p.m. to assist the undercover officer and to provide safety and backup in order to apprehend the alleged drug traffickers. Included in the group were four members of the Connecticut State Police assigned to the Connecticut Narcotics Task Force, several local DEA agents, and various agents and officers from the NYDETF.

At approximately 1:35 p.m., Garcia drove alone into the rest area. Palacio and co-defendant Victor Monsalve arrived in another vehicle almost simultaneously. Both Garcia and Palacio exited their cars and entered the undercover officer's car. The undercover officer then allegedly showed them the money for the cocaine purchase. Palacio left the vehicle, walked back to Monsalve's car and spoke to him through the window, and then walked toward a pay telephone located nearby. Monsalve exited his vehicle carrying a yellow bag apparently containing the kilogram of cocaine and entered the undercover officer's car. After some brief discussion, Garcia, Monsalve, and Palacio were arrested around 1:50 p.m.

Following the arrests several members of the New York law enforcement group returned to New York City to pursue a related arrest. The remaining law enforcement officials secured and searched the defendants and their cars, and communicated with the agents still watching Garcia's residence. They placed the three defen-

dants in the car of Special Agent James DiCaprio of the NYDETF. He and other members of the NYDETF, including Detective Thomas Murray, followed the local federal agents and state police officers, one of whom was assigned to accompany the arresting officers and the defendants to the federal courthouse in Bridgeport, to Garcia's apartment. Murray and DiCaprio followed the caravan of vehicles to Garcia's apartment both to participate in the investigation of the remaining suspect and to avoid getting lost in Bridgeport. Accordingly, at approximately 2:45 p.m., the three defendants arrived at Garcia's residence and waited outside while the remaining suspect was questioned.

At 3:50 p.m., Special Agent Dale Seymour, who had been involved in questioning the remaining suspect, learned that the defendants were being held outside of Garcia's apartment and arranged for their immediate transfer to the federal courthouse. At 3:54 p.m., an Assistant United States Attorney ("AUSA") called the chambers of Magistrate Joan G. Margolis in New Haven, Connecticut to schedule a presentment.[1] The AUSA spoke with the Magistrate's secretary who informed him that Magistrate Margolis had just left the New Haven Courthouse for a medical appointment and was unavailable to handle any presentments that afternoon. The secretary did, however, schedule the presentments for 10:00 a.m. on November 1, 1989 and contacted the Clerk's Office after the AUSA had advised her that the defendants needed attorneys and interpreters.

Palacio and his co-defendants were "processed" at the office of the United States Marshal at the Bridgeport Courthouse between 4:00 and 5:00 p.m. They were then taken to the Bridgeport Police Department to be detained after it was determined that they would not be presented in New Haven until the next day. After reviewing the day's events with the AUSA and returning to his office, Special Agent Seymour went to the Bridgeport Police Department to question the defendants. He first questioned Monsalve and then Garcia. Each interrogation lasted roughly one hour. At 9:25 p.m., Seymour advised Palacio of his rights, including the right to remain silent, the right to counsel, particularly his right to have counsel present during questioning, and his right to be promptly interviewed concerning the terms and conditions of his release. Palacio signed the written notice of rights form, acknowledging that he had read the form.[2]

Seymour questioned Palacio in an office at the Bridgeport Police Department. After introducing himself and Detective Villegas, Seymour asked Palacio if he wanted to tell them what he knew about the cocaine and the day's events. Palacio expressed a willingness to talk and then he and Seymour discussed the events leading to his arrest. At 10:00 p.m., Agent Seymour began writing out a statement which he reviewed with Palacio. He then gave the entire statement to Palacio who read and signed it at about 10:30 p.m.

At 11:00 a.m. on November 1, 1989, Palacio was presented before Magistrate Margolis and counsel was appointed at that time.

## CONCLUSIONS OF LAW

Fed.R.Crim.P. 5(a) requires that an arrested person be taken "without unnecessary delay" for presentment before the nearest available federal magistrate, or if one is unavailable before a state or munici-

1. Magistrate Margolis is assigned to the Bridgeport seat of court and normally handles presentments resulting from arrests occurring in Fairfield County. Magistrate Arthur H. Latimer, who is assigned to the New Haven seat of court, normally handles presentments resulting from arrests made in the New Haven area. When one of the Magistrates is unavailable, the other Magistrate handles any presentments that are to be made. Testimony at the hearing on the motion to suppress by both the Clerk of the Court and Magistrate Margolis' secretary indicated

that the AUSA handling a case is responsible for seeking the other Magistrate or another judicial officer if one or both of these Magistrates is unavailable.

2. The rights form is written in both English and in Spanish. Accompanying Agent Seymour was Detective Ralph Villegas, who is fluent in both English and Spanish. Though Villegas was present, his interpreting skills were not needed.

pal judicial officer. To remedy a violation of an arrestee's right to a prompt presentment, the Supreme Court, exercising its supervisory authority over federal courts, held that confessions must be suppressed if obtained from suspects during periods of unnecessary delay prior to presentment. *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943); *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

Following the Court's decisions creating the so called *McNabb-Mallory* rule and the public debate occasioned by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), in 1968 Congress enacted rules governing the admissibility of post-arrest confessions into evidence. The rule regarding presentments, as codified at 18 U.S.C. § 3501(c) provides, in pertinent part, that a confession "shall not be inadmissible solely because of delay in bringing such person before a magistrate ... if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury *and if such confession was made or given by such person within six hours immediately following his arrest or other detention.*" (emphasis added). A confession falling outside that six-hour limit may still be admissible if the trial judge determines that the delay in presentment was "reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer." 18 U.S.C. § 3501(c).

The Second Circuit, in interpreting section 3501(c), has held that a delay exceeding six hours, if not found to be reasonable under the circumstances, may itself be a basis for excluding a confession, without consideration of the issue of voluntariness. *United States v. Perez,* 733 F.2d 1026, 1030–31 (2d Cir.1984). According to *Perez,* the power of the district court to suppress statements whenever an unreasonable delay in presentment occurs is discretionary. *Id.* at 1035; *see also United States v.*

*Khan,* 625 F.Supp. 868, 874 (S.D.N.Y.1986); *cf. United States v. Rubio,* 709 F.2d 146, 154 (2d Cir.1983) (where unreasonable delay has occurred a court must next determine what, if any, prejudice a defendant has suffered by reason of the delay).

The determination of whether a delay beyond the six-hour time limit is unreasonable is necessarily fact specific. Yet, though the statutory language focuses specifically on reasonableness "considering the means of transportation and the distance to be traveled to the nearest available such magistrate[ ]", courts also consider the availability of magistrates, *see United States v. Marrero,* 450 F.2d 373, 378 (2d Cir.1971) ("[section] 3501(c) necessarily subsumes the availability of a magistrate"), *cert. denied,* 405 U.S. 933, 92 S.Ct. 991, 30 L.Ed.2d 808 (1972), and, in appropriate instances, the need for routine processing and overnight lodging. *See United States v. Isom,* 588 F.2d 858, 862 (2d Cir. 1978); *United States v. Collins,* 462 F.2d 792, 795 (2d Cir.1972); *Marrero,* 450 F.2d at 378. In focusing on how the time spent was used, *see United States v. Johnson,* 467 F.2d 630, 636 (2d Cir.1972) (focal question is how the time was spent), *cert. denied,* 410 U.S. 932, 93 S.Ct. 1382, 35 L.Ed.2d 595 (1973), courts have not deemed delay caused by the desire to investigate other crimes a reason justifying disregard of a defendant's right to a prompt presentment. *See, e.g., Perez,* 733 F.2d at 1036.

■ Palacio confessed his involvement in the crimes at issue starting some seven and one-half hours after his arrest and detention at the rest stop. Over twenty-one hours elapsed between the time of his arrest and his presentment. The first delay following his arrest resulted from the decision of the arresting officers to transport the three defendants back to Garcia's residence rather than proceeding directly to the Bridgeport Courthouse.[3] The government's excuses for this lapse, ranging from a desire to continue this investigation to

---

**3.** As testified to by Agent Seymour, Garcia's residence was not located on the route between the rest stop and the Bridgeport Courthouse.

the unfamiliarity of the New York officers and agents with the Bridgeport environs, however credible, cannot be condoned. Though the Court has no doubt about the arresting officers' legitimate interest in pursuing the criminal investigation to its end, it is clear that their presence was not needed at the Garcia residence after the arrests at the rest stop. Moreover, the failure of the out-of-state officers and agents to ask directions to the Bridgeport Courthouse or to be led there immediately by local federal agents or state officers specifically assigned to such a task, resulted in an unreasonable delay of roughly seventy minutes. Had the defendants been brought directly to the Bridgeport Courthouse from the rest area, they would have arrived there no later than 2:45 p.m. If a call had been placed to Magistrate Margolis' chambers at that time, when the Magistrate was still present, the AUSA might very well have been directed to contact the other Magistrate sitting at the New Haven Courthouse or Magistrate Margolis might simply have decided to take the presentment prior to leaving.

The next and primary delay resulted when the government failed to make any effort whatsoever to determine if another magistrate or judicial officer was available to take the presentment upon learning at 3:54 p.m. that Magistrate Margolis was unavailable. The Court finds the government's reliance on Magistrate Margolis' secretary's decision to schedule the presentment at 10:00 a.m. the next day unreasonable for the following reasons. As testified to by the Clerk of the Court, Kevin Rowe, Magistrate Latimer was available in New Haven on October 31, 1989 and had taken grand jury returns at 3:42 p.m. He, however, was not contacted by the government. Even if Magistrate Latimer had been unavailable, the government has not offered any evidence that it sought to present Palacio before either of the two

federal judges sitting at the Bridgeport Courthouse. In the same building in which Palacio was being processed after his arrest, this judicial officer was hearing a jury trial which adjourned at 5:00 p.m. Yet no attempt at presentment was made at the adjournment or later that evening in chambers, after Palacio was processed and before he was sent to the Bridgeport Police Department.[4]

The government does not contend that it lacked the personnel or means to make the thirty to forty minute drive to New Haven or to take him from the third to the fourth floor of the Bridgeport Courthouse.[5] It concedes that "it was a mistake to bring [the] defendants to Garcia's residence...." Govt.Opp.Mem. (2/9/90) at 11. The government also states that "[w]hile it may be argued that the better course for the [AUSA] would have been to make further contacts, in the absence of purposeful or negligently unreasonable delay, the confession should not be suppressed." Id. In light of the facts and the holding of Perez, this Court disagrees.

Perez is factually analogous to the case at hand. Perez was arrested at 3:25 p.m. on a Friday afternoon, processed at a DEA office until 4:45 p.m., and placed in a holding cell while the arresting agents turned their attention to procuring a search warrant for the premises of another suspect. Perez, 733 F.2d at 1027–28. Even though a magistrate was available at 6:15 p.m., Perez was not presented. Id. at 1028. At 10:00 p.m., after the search warrant was executed and two further arrests were made, the three defendants were transported to the United States Attorney's office for an "interview" with an AUSA. Id. At that time no magistrate was available. Id. At 11:20 p.m., the interview began, Perez made a lengthy inculpatory statement after being advised of his rights, and then Perez spent the night in a local prison. Id. The

4. Over the years such presentments have been routinely held before this judicial officer whenever the government has requested.

5. For the record, the Court also notes that no consideration was given to presenting Palacio before one of the three federal judges sitting in

New Haven or to taking Palacio to the Hartford, Connecticut seat of court something more than an hour away from the Bridgeport Courthouse, where there are also two magistrates and three judges sitting.

next morning Perez was brought to federal court at 9:00 a.m., was further processed by United States Marshals and pre-trial services, and he made two further inculpatory statements prior to being presented before a magistrate at 2:15 p.m., some twenty-three hours after his arrest. *Id.*

■ In *Perez*, both the district court and the Second Circuit focused exclusively on the reasonableness of reasons stated for the delay and did not consider whether the delay was "purposely or negligently unreasonable". Moreover, absent from both *Perez* and this case is any evidence regarding the use of physical coercion or other egregious tactics to garner a confession. Rather, as in *Perez*, the government's behavior here reflects an indifference to the requirements of Fed.R.Crim.P. 5(a) and 18 U.S.C. § 3501(c). *See United States v. Colon,* 835 F.2d 27, 31 (2d Cir.1987) (noting in *dicta* that apparent indifference to Rule 5(a) will lead to the future exclusion of evidence), *cert. denied,* 485 U.S. 980, 108 S.Ct. 1279, 99 L.Ed.2d 490 (1988).

When such indifference results in presentment delay beyond the six-hour limit specified in section 3501(c), the district court has the discretionary power to suppress a defendant's statements. While in *United States v. Rubio,* 709 F.2d 146, 153 (2d Cir.1983) the Second Circuit agreed with the district court's "finding that there was no purposeful postponement of arraignment, and no lengthy, hostile, or coercive interrogation which caused the appellant prejudice[ ]" and affirmed the denial of the defendant's suppression motion, that part of its discussion relates to its conclusion that the district court was not clearly erroneous in finding that the defendant's statements "were voluntary acts...." As *Perez* makes clear, however, a district court may suppress statements on the basis of delay without consideration of the issue of voluntariness. 733 F.2d at 1035. Furthermore, after finding a violation of Rule 5(a) and section 3501(c), the *Rubio* court held that suppression was not warranted in spite of the delay because the defendant, who made only exculpatory statements in response to questioning, suffered no resulting prejudice. 709 F.2d at 154. Here, precisely the contrary is true. Palacio confessed. For all these reasons, *Rubio* does not support the government's argument against suppression.

Accordingly, without reaching the question of the voluntariness of the statements made by Palacio, this Court holds that the government unnecessarily and unreasonably delayed his presentment in violation of Fed.R.Crim.P. 5(a) and 18 U.S.C. § 3501(c). To remedy the over twenty-one hour delay in presentment, this Court exercises its discretion to suppress Palacio's statements.[6]

## CONCLUSION

Palacio's motion to suppress due to the unnecessary and unreasonable delay in presentment is GRANTED. Accordingly, Palacio's motion to suppress on grounds that his waiver of rights and subsequent statements were involuntary is DENIED as moot.

SO ORDERED.

---

6. Though *United States v. Morgan,* Crim. No. H–89–93 (PCD), slip op. at 13–24, —— WL —— (D.Conn. Feb. 13, 1990) reaches a different result on the question of suppression in light of unreasonable presentment delay, it is distinguishable. *Morgan,* though finding the presentment delay unreasonable, also considers the issue of voluntariness, an issue which *Perez* indicates need not necessarily be considered when the presentment delay exceeds six hours. *See Perez,* 733 F.2d at 1035 ("nothing in our prior cases requires a finding that the confession obtained was 'involuntary'"). Furthermore, in *Morgan,* defendant Robin Morgan "initiated the statements[ ]" she made to a federal agent and "[t]he only interview of [this] defendant occurred at her instance." *Morgan,* slip op. at 20, 23; *cf. Colon,* 835 F.2d 27, 30–31 (spontaneous statement, not a product of interrogation, not excludable on account of unreasonable presentment delay). The same is not true here.