**UNITED STATES of America,**

v.

**Warren TONEY, Luis Perez, Felix Roman and Jorge Negron, Defendants.**

**No. 83 Cr. 702.**

United States District Court,
S.D. New York.

Jan. 12, 1984.

---

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for United States of America; John M. McEnany, Asst. U.S. Atty., New York City, of counsel.

Norman Reimer, New York City, for defendant Warren Toney.

Jed S. Rakoff, Andrea J. Berger, Mudge Rose Guthrie Alexander & Ferdon, New York City, for defendant Luis Perez.

Michael Noble, New York City, for defendant Felix Roman.

Joel Stein, New York City, for defendant Jorge Negron.

## OPINION

EDWARD WEINFELD, District Judge.

Luis Perez and Jorge Negron move separately to suppress statements each made to an Assistant United States Attorney following his arrest and before he was taken before a Magistrate. The two are under indictment, together with Warren Toney and Felix Roman, on charges of conspiracy

to distribute, and possession with intent to distribute, heroin. Each asserts as grounds for suppression: 1) that his statements were involuntary; and 2) that the statements were made during a period of unnecessary delay in violation of Fed.R. Crim.P. 5(a)[1] and 18 U.S.C. § 3501(c).[2] Because the factual situation differs in each, the motions are considered separately.

### The Perez Motion

Perez was arrested on Friday, October 28, 1983 at about 3:25 p.m., and was taken forthwith to the office of the Drug Enforcement Administration (DEA). Following his arrival there at 4:00 p.m., Perez was "processed"—fingerprinted, strip-searched, and photographed—and his arrest record was obtained. The processing was completed at approximately 4:45 or 5:00 p.m. Perez was then held in a cell at the DEA office until approximately 10:00 p.m., when he and his co-defendants, some of whom had been arrested later than he, were brought to the United States Courthouse. There, he was held until 11:20 p.m., when he was interviewed by Assistant United States Attorney (AUSA) Perlmutter, in the presence of Special Agent Camille Colon, one of the arresting officers, and the case agent in charge. Perez was given *Miranda* warnings[3] at the beginning of the interview, but did not sign a waiver of rights form. During the interview he made inculpatory statements, which he now seeks to suppress.

After his interview, Perez was incarcerated overnight at the Metropolitan Correction Center (MCC). He was not brought before a Magistrate until 2:15 p.m., Saturday, October 29. The explanation proffered for the delay on Saturday is that the AUSA wanted to interview co-defendants who had not been questioned the previous night, and that Perez and his co-defendants had to be taken to the United States Marshal, then to Pre-Trial Services, and had to wait for the Legal Aid attorney who was to be assigned to represent them for the purposes of the bail determination.

Perez contends that his statements were not voluntarily made because he was a heroin addict and was suffering from withdrawal symptoms at the time of his interview. I do not reach the disputed issue of the voluntariness of his statements. Other facts indicate that the statements were obtained during a period of unnecessary and unreasonable delay in taking Perez before a Magistrate.

Following the completion of Perez' processing, which was no later than 5:00 p.m. on Friday, he was not taken before an available Magistrate, nor lodged at the MCC. The hearing disclosed the reasons: Following Perez' arrest, Agent Colon was instructed to apply for a warrant to search the home of Toney, a co-defendant of Perez. The agent arrived at the Courthouse

---

1. Fed.R.Crim.P. 5(a) reads in pertinent part:

   An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate, or in the event that a federal magistrate is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. § 3041.

2. 18 U.S.C. § 3501(c) reads:

   (c) In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate or other officer empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: *Provided,* That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer.

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

sometime after 5:00 p.m., conferred with AUSA Perlmutter, then appeared before the Magistrate to apply for the warrant. The application for the warrant was granted by the Magistrate at approximately 6:15 p.m., and Agent Colon effected its execution in the next several hours. Two additional co-defendants had been arrested in the meantime. Agent Colon returned to the DEA office at 8:00 p.m., and during the next two hours she and several others processed the two newly-arrested co-defendants and the evidence from Toney's apartment. Only when the processing of all defendants and all the evidence was complete were Perez and his co-defendants taken from the DEA office to the Courthouse.

■■■■ Upon the facts presented, any statements made by Perez after Friday, October 28 at 5:00 p.m. must be suppressed because of unnecessary and unreasonable delay in taking him before the Magistrate.[4] At 5:00, when Perez had been fully processed at the DEA office, a Magistrate was available to arraign him and advise him of his rights as specified by Fed.R.Crim.P.

5(c). Indeed, the hearing established that the Magistrate remained on duty until 6:25 p.m., in connection with another matter. There is no adequate explanation for the delay in taking Perez before the Magistrate. The argument that delay was necessary in order to obtain the search warrant for Toney's apartment and to effect the arrest of other co-defendants does not wash. Perez' right to a reasonably prompt arraignment cannot be subordinated to serve the convenience of the agents in seeking and processing other alleged culprits. Neither is the alleged "shortage of manpower" an excuse. The testimony indicates that more than six agents were assigned to the case and one could readily have taken Perez for arraignment before the available Magistrate. No reason has been advanced why Agent Colon could not have taken Perez before the Magistrate at the same time she applied for the Toney search warrant, when Perez had been fully processed and his arrest record and personal history were known and available for the fixing of bail. The failure to take Perez before a Magistrate until the following day

---

**4.** An unreasonable delay of more than six hours between arrest and the time a defendant is taken before a magistrate warrants suppression of statements obtained during the delay, without regard to the voluntariness of the statement. *United States v. Marrero,* 450 F.2d 373, 379 (2d Cir.1971) (Friendly, J. concurring), *cert. denied,* 405 U.S. 933, 92 S.Ct. 991, 30 L.Ed.2d 808 (1972). *See also, United States v. Rubio,* 709 F.2d 146, 154 (2d Cir.1983) (Delay can be used to "deny the defendant the right to a prompt arraignment" as well as for coercive interrogation). *Accord, United States v. Sotoj-Lopez,* 603 F.2d 789 (9th Cir.1979); *United States v. Gaines,* 555 F.2d 618 (7th Cir.1977); *United States v. Erving,* 388 F.Supp. 1011 (W.D.WI 1975).

The cases cited by the prosecution are not to the contrary. In each of those cases, the Court of Appeals found that the delay in taking the defendant before a magistrate was reasonable, and therefore did not, standing alone, require suppression. *See, e.g., United States v. Rubio, supra,* at 154 ("[E]xcept for the reasonable periods of time actually spent in processing and in routine questioning, the [48] hours between arrest and arraignment herein were spent mainly in lodging at the MCC while awaiting arraignment" and the delay therefore was not unreasonable or unnecessary.); *United States v. Isom,* 588 F.2d 858, 862 (2d Cir.1978) (The delay between arrest and confession not unreasonable because

all but 4½ hours were spent in lodging defendant overnight and giving him medical treatment); *United States v. Johnson,* 467 F.2d 630, 636 (2d Cir.1972), *cert. denied,* 410 U.S. 932, 93 S.Ct. 1382, 35 L.Ed.2d 595 (1973) (Six hours and 55 minutes between arrest and arraignment was not unreasonable because time was spent in transit, routine processing, eating, and two hours and 40 minutes of interviews); *United States v. Collins,* 462 F.2d 792, 795–96 (2d Cir.), *cert. denied,* 409 U.S. 988, 93 S.Ct. 343, 34 L.Ed.2d 254 (1972) (21 hours between arrest and confession not unreasonable when time was spent in transit, routine processing, and overnight incarceration); *United States v. Marrero, supra,* at 375–378 (17 hour delay, which included overnight incarceration is not unreasonable). *Cf. United States v. Burgos,* 579 F.2d 747 (2d Cir.1978) (No explicit finding that 15 hour delay, which included overnight incarceration, was reasonable); *United States v. Campanile,* 516 F.2d 288 (2d Cir.1975) (No explicit finding that 20 hour delay between arrest, transfer to federal custody and confession to federal authorities was reasonable); *United States v. Ortega,* 471 F.2d 1350, (2d Cir.1972), *cert. denied,* 411 U.S. 948, 93 S.Ct. 1925, 36 L.Ed.2d 409 (1973) (No explicit finding that delay between arrest early Sunday morning and arraignment Monday afternoon was reasonable).

at 2:30 p.m., almost twenty-four hours after his arrest was unreasonable. Accordingly, all statements Perez made to the AUSA at 11:20 p.m. during the interview, and to Agent Colon the following day, are suppressed.

This disposition makes it unnecessary to consider the general attack leveled on the practice of the United States Attorney in this district in interviewing arrested defendants prior to their being brought before the Magistrate and assigned counsel, as to which the Judges of the Court of Appeals have expressed contrary views.[5]

### The Negron Motion

■ Defendant Negron was arrested later than Perez, at 5:30 Friday evening, and was not interviewed by an AUSA until Saturday morning. He concedes that a Magistrate was not available after he was arrested and processed Friday evening, and that his overnight incarceration at the MCC was a necessary delay. Excluding that time, less than six hours elapsed between Negron's arrest and his statements to the AUSA. A statement obtained within six hours of arrest is not inadmissible solely because of pre-arraignment delay, under 18 U.S.C. § 3501(c).[6] Rather, delay is just one factor the Court must consider in determining whether the statement was given voluntarily.[7]

Negron contends that his statement was not voluntary[8] and that his waiver of his constitutional rights was not knowing and intentional,[9] because, he claims, he was questioned without the presence of a lawyer even though he had asked that one be appointed; he was told that he faced thirty years imprisonment; and he was threatened that a lack of cooperation would be reported to the trial judge. He also claims that his less-than-perfect understanding of English, combined with his lack of prior experience with the criminal justice system prevented him from fully understanding his rights. His version of events differs significantly from that of Jan Patterson, the AUSA who questioned him.

■ Upon a review and appraisal of the evidence presented at the hearing and the demeanor of the witnesses, the Court finds that Negron acted voluntarily, knowingly, and intentionally when he made incriminating statements to the AUSA. The Court accepts the testimony of the AUSA that Negron never asked for an attorney, and that she did not threaten or pressure Negron in any way. The evidence indicates that the AUSA was careful to advise Negron of his rights, and to respect those rights during the interview. She conducted the interview in English, but only after asking Negron in both Spanish and English which he understood. After he stated that he understood both, she advised him in Spanish that she would proceed in English, but that if he did not understand any question, she would obtain an interpreter for him. He responded that he understood everything. The AUSA was careful to elicit a response from Negron each time she advised him of his rights and asked if he understood them; she attempted to simplify the form warnings to ensure that Negron understood all the terms, telling him, for example, that he had a right to "hire" an attorney rather than using the standard "retain an attorney" warning; and she

---

**5.** *Compare United States v. Mohabir,* 624 F.2d 1140, 1150 (2d Cir.1980); *United States v. Isom, supra* note 4, at 863; *United States v. Duvall,* 537 F.2d 15, 23–25 (2d Cir.), *cert. denied,* 426 U.S. 950, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976); and *United States v. Marrero, supra* note 4, at 379 (Friendly, J. concurring); *with United States v. Ortega, supra* note 4, at 1362.

**6.** *United States v. Isom, supra* note 4, at 862–63.

**7.** *United States v. Rubio, supra* note 4, at 153.

**8.** *See Culombe v. California,* 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961).

**9.** *See Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). *See also, Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981); *Fare v. Michael C.,* 442 U.S. 707, 724–25, 99 S.Ct. 2560, 2571–72, 61 L.Ed.2d 197 (1979); *North Carolina v. Butler,* 441 U.S. 369, 374–75, 99 S.Ct. 1755, 1757–58, 60 L.Ed.2d 286 (1979); *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977).

asked him to read his rights, look over the written version of his statement, and sign a waiver form.

Negron's attempt to portray himself as a confused, naive, and immature youth is belied by the record, and I reject as pretense his claim that when the AUSA introduced herself as the prosecutor he thought she was his attorney. At the time of the interview Negron was 20 years old, had attended New York City high schools, finishing the eleventh grade, and had taken courses such as English, math, accounting and social studies in night school. When asked if he wished to answer some questions, he responded "It depends on what you ask." When asked to read over his statement, he made several detailed changes, adding a sentence to his description of the events leading to his arrest, and changing the amount of Social Security payments he received from $269 to $269.54, for example.

 The AUSA admits that she told Negron that he faced a sentence ranging from probation to 15 years on each of two counts, but that she did so only in response to his question about whether he would go to jail. She testified that she never mentioned the sentence except in response to that question, and that she never suggested that the sentence might be tied to his cooperation, or otherwise sought to use the sentence as "leverage." While it is inappropriate for the prosecution to mention the length of the possible sentence while interviewing an uncounseled defendant in order to induce the defendant's cooperation,[10] the Court is convinced that the discussion of the sentence here did not render Negron's statement involuntary. The sentence was referred to only upon the defendant's request for information about his potential punishment, rather than in an effort to secure his cooperation; the AUSA was

careful to explain the range of sentence possible, including the possibility of receiving no jail time at all; and the interview as a whole was conducted with strict regard for the rights of the defendant.[11]

The Court is satisfied that Negron was fully and fairly advised of his rights, as required by *Miranda,* and that he voluntarily and knowingly made the statement he seeks to suppress. Accordingly his motion to suppress his post-arrest statement is denied.

---

10. *United States v. Armedo-Sarmiento,* 545 F.2d 785 (2d Cir.1976), *cert. denied,* 430 U.S. 917, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977); *United States v. Duvall, supra* note 5, at 23–25.

11. As noted in the discussion of Perez' motion, the Court expresses no opinion about the Southern District United States Attorney's practice of interviewing defendants before they are taken

before a Magistrate. The issue involves a policy decision as to judicial supervision of the administration of criminal practice in the Federal Courts. Thus far, our Court of Appeals has made no definite ruling on the issue. *See* note 5, *supra.* The issue should be left for determination by higher authority.