**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Edward Joseph FOLEY and John Joseph Edler, Defendants-Appellants.**

**Nos. 494, 495, Dockets 83–1255, 83–1256.**

United States Court of Appeals, Second Circuit.

Argued Nov. 29, 1983.

Decided May 23, 1984.

As Amended July 3, 1984.

**46**

Henriette D. Hoffman, Legal Aid Socie-
ty, Federal Defender Services Unit, New
York City, for defendant-appellant Edler.

Carmine J. Perrotta, New York City, for
defendant-appellant Foley.

Barry A. Bohrer, Asst. U.S. Atty., S.D.
N.Y., New York City (Rudolph W. Giuliani,
U.S. Atty., S.D.N.Y., Peter B. Sobol, Asst.
U.S. Atty., New York City, of counsel), for
plaintiff-appellee.

Before LUMBARD, WINTER and
PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Defendants appeal their convictions for
smuggling, 18 U.S.C. § 545, removing
goods from customs' custody, 18 U.S.C.
§ 549, receipt of stolen goods, 18 U.S.C.
§ 2315, and conspiracy, 18 U.S.C. § 371.
None of defendants' contentions on appeal
warrants reversal; we write this opinion
solely to express this panel's disapproval of
the pre-arraignment interview practice en-
gaged in by the United States Attorney's
office for the Southern District of New
York.

Defendants, both longshoremen, were
caught by customs agents at about 12:14
A.M. entering two cars illegally parked on
Pier 90 in Manhattan near where the ocean
liner Queen Elizabeth II had been berthed
only a few hours earlier. Inside the cars
were cartons of liquor, caviar, lobster tails,
and other foodstuffs which had been taken
from the Q.E. II. One of the cars was
owned by defendant Foley, the other by
Edward Gray, a dock hiring boss. Edler's
empty car was parked nearby.

After questioning by the agents, defend-
ants were given summonses to appear the
following afternoon at the office of the
United States Attorney for the Southern
District of New York. Anticipating formal
charges and arraignment, an Assistant
United States Attorney (AUSA) notified the
magistrate, who in turn notified a legal aid
attorney that he would be required to re-
present both defendants at their arraign-
ment scheduled for 5:00 P.M. Immediate-
ly, the legal aid attorney called the AUSA
and requested that his clients not be inter-
viewed. Ignoring the request, the AUSA
kept both the magistrate and legal aid
counsel waiting for two hours while he
interviewed the defendants. Only then did
the AUSA permit the arraignment to go
forward.

Before considering our difficulties
with the prearraignment interview, we
briefly dispose of the other two issues
raised on appeal. First, both defendants
argue that the district judge erred when, in
response to a jury request that the trial
judge explain "very simply the facts" of
the substantive counts, he expressed his
opinions as to the weight of the evidence
bearing upon some of the elements in the
case. For example, he opined that, as to
whether the merchandise was contraband,
"I think it's perfectly clear from the evi-
dence, and I don't see how you can come to
any serious difficulty in concluding that
this fancy merchandise was contraband,
that is, that it wasn't legally in the United
States when it was on that pier in those
two cars." He further observed that the
evidence about the merchandise being con-
traband "is almost uncontradicted" and
"should be very persuasive in your opin-
ion".

Of course, a district judge may not usurp
the jury's fact-finding functions, but we

find no error here, because the trial judge made the jury's proper function clear not only in his main charge, but again before beginning his supplemental instruction, when he said, "[L]et me stress right now that it is you who have the stupendous responsibility of finding the facts, not I who am supposed to tell you the facts." Further on, referring to the facts he was commenting about, he reminded the jury of their duty and power concerning the facts at least 15 times in 16 pages of the transcript, with such comments as "It's up to you entirely", and "This is only a respectful suggestion because you are free to reject any evidence in the case".

There is no claim that the trial judge either mischaracterized or unfairly summarized the evidence, and as we recently noted:

> The trial judge in a federal court may summarize and comment upon the evidence and inferences to be drawn therefrom, in his discretion * * *. So long as the trial judge does not by one means or another try to impose his own opinions and conclusions as to the facts on the jury and does not act as an advocate in advancing factual findings of his own, he may in his discretion decide what evidence he will comment upon. His fairness in doing so must be judged in the context of the whole trial record, particularly the evidence and the arguments of the parties.

*United States v. Lartey,* 716 F.2d 955, 966 (2d Cir.1983) (quoting *United States v. Tourine,* 428 F.2d 865, 869 (2d Cir.1970), *cert. denied,* 400 U.S. 1020, 91 S.Ct. 581, 27 L.Ed.2d 631 (1971)). *Accord Quercia v. United States,* 289 U.S. 466, 469, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933). Viewing the supplementary instructions in the context of the entire case, we hold that the trial judge did not in this instance exceed the bounds of his proper function.

■ Second, Edler contends that statements he made to the customs officers after they stopped him and Foley on the pier should have been suppressed by the district court for failure to give him a *Miranda* warning. The court found a *Miranda* warning was not required, because the statements had been voluntarily made pursuant to a lawful investigative stop, *see*

*Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), at a time when Edler was neither under arrest nor subject to custodial interrogation. *See Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *United States v. Ross,* 719 F.2d 615, 621–22 (2d Cir.1983). Since the district judge's findings on these matters are not clearly erroneous, we find no error in his refusal to suppress. *See United States v. Ross,* 719 F.2d at 621–22; *United States v. Hall,* 724 F.2d 1055, 1060 (2d Cir.1983).

Finally, we turn to the pre-arraignment interview. Prosecutors, of course, like to have statements from a defendant, and much of our criminal jurisprudence in recent years has reflected the determination of courts and legislatures to develop procedures that will prevent unfair use of a defendant's statements without unduly hampering legitimate and fair law enforcement efforts. In this struggle a defendant's "right to counsel" has played a significant role. Courts have barred the use in evidence of a defendant's statements elicited by investigating officers or prosecutors not only in violation of a defendant's fifth amendment right to have counsel present during questioning, *e.g., Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Tague v. Louisiana,* 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980); *United States v. Little,* 647 F.2d 533, 534 (5th Cir.1981); *United States v. Howard,* 426 F.Supp. 1067, 1071 (W.D.N.Y.1977), but also in the absence of a clear waiver of counsel after the sixth amendment right to counsel "attaches", *e.g., Brewer v. Williams,* 430 U.S. 387, 404–06, 97 S.Ct. 1232, 1242–43, 51 L.Ed.2d 424 (1977); *United States v. Mohabir,* 624 F.2d at 1140, 1151 (2d Cir.1980); *United States v. Satterfield,* 558 F.2d 655, 657 (2d Cir.1976); *United States v. Lilla,* 534 F.Supp. 1247, 1280–81 (N.D.N.Y.1982).

As a matter of practice and policy the United States Attorney's Office for the Southern District of New York, apparently alone in the federal system, *see United States v. Duvall,* 537 F.2d 15, 23 (2d Cir. 1976), *cert. denied,* 426 U.S. 950, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976); *United*

*States v. Restrepo-Cruz,* 547 F.Supp. 1048, 1060–62 (S.D.N.Y.1982), routinely has an AUSA interview uncounseled defendants just before they are taken before a magistrate where, pursuant to Fed.R.Crim.P. 5(a), they will be informed of the charges against them, advised of their constitutional rights, and have counsel assigned to them if needed. The United States Attorney defends his current use of this practice, patently suspect because it permits a lawyer to interview a layperson on the subject of his upcoming prosecution, on the ground that the interview does not occur at a critical stage of the prosecution and therefore does not require the assistance of counsel. He argues that no "commitment to prosecute" has yet been made, and he refers to "salutary purposes" served by the practice, claiming that it produces "potential beneficial" effects to the defendant and enhances the quality of criminal justice. Among the "vital" law enforcement functions he urges are served are obtaining voluntary confessions by culpable individuals, easing the burdens of court congestion, enabling the prosecutor to concentrate on cases that are more likely to go to trial, evaluating the voluntariness and accuracy of previous statements made by the defendant, confirming whether his *Miranda* rights were violated, eliminating frivolous motions and unnecessary hearings in the district court, uncovering allegations of agent misconduct, advising a defendant of the possibilities of witness protection and relocation, eliciting agreements to cooperate, weeding out weak cases, and correcting the mistakes of arresting officers.

Edler, on the other hand, contends in general that the pre-arraignment interview practice is a technique that obtains damaging admissions from uncounseled defendants and commits them to positions which may discourage their later taking the witness stand when they would be subject to cross-examination based upon the statements elicited during the interview. He complains specifically that his pre-arraignment interview was particularly egregious, because it was conducted by the AUSA despite a specific request by legal aid counsel that the government not question him.

■ We think that this practice of routinely conducting pre-arraignment interviews raises serious constitutional questions, *see United States v. Perez,* 733 F.2d 1026, 1036 (2d Cir.1984); *Duvall,* 537 F.2d at 23–24; *Mohabir,* 624 F.2d at 1150–51, as well as ethical ones, *see* Disciplinary Rule 7–104(A)(1) of the ABA Code of Professional Responsibility; *United States v. Jamil,* 546 F.Supp. 646, 651–55 (E.D.N.Y.), *rev'd on other grounds,* 707 F.2d 638 (2d Cir. 1983). The ethical problems surrounding this practice are especially vivid in this case, where the AUSA, by interviewing Edler in spite of a specific request from Edler's soon-to-be appointed Legal Aid Attorney not to do so, contravened the principles of DR7–104(A)(1), which prohibits a lawyer from communicating "with a party he knows to be represented by a lawyer" without the consent of the party's lawyer. *See United States v. Jamil,* 546 F.Supp. at 651–55.

Most, if not all, of the practice's claimed advantages would appear to be equally available immediately after arraignment, when a defendant would have the benefit of advice from his attorney and would be less vulnerable to psychological manipulation by the prosecutor. *Cf. United States v. Perez,* 733 F.2d at 1036. Moreover, we agree with defendant that the interview does have two effects which, more than coincidentally we think, aid the prosecutor and harm the defendant. By interviewing a defendant before he is assigned an attorney, the prosecutor may: (1) obtain admissions from the defendant which would not be forthcoming once an attorney enters the picture, and (2) commit the defendant to a "story" or position that would restrict his options at trial, including his option to testify in his own behalf. Were it necessary to our decision here, we might well be required to hold that any benefits accruing to the prosecutor from the interview are outweighed by the need to protect uncounseled defendants' constitutional and legal rights.

Our concern is enhanced by the fact, acknowledged at oral argument, that when a defendant is known to be represented by private counsel the government does not conduct a pre-arraignment interview. In effect, therefore, the practice is invoked only against a defendant who is poor and unrepresented. *See United States v. Perez, supra; United States v. Restrepo-Cruz,* 547 F.Supp. at 1061. Another panel of this court recently expressed its concern about the propriety of this practice. *United States v. Perez, supra.* While it upheld suppression of the defendant's statements on other grounds, the panel, through Judge Cardamone, observed that the pre-arraign-

ment interview procedure "has received sharp criticism from a number of judges of this court". *Id.* at 1036. We now add our voice to the growing chorus of judges who "remain troubled by the practice", *id.,* but we, too, stop short of holding the practice to be invalid in this case. Even if we were to find the practice to be unlawful or unethical, we would be compelled to conclude that any error that may have occurred as a result of using Edler's statements on cross-examination was harmless, because all the other evidence against both defendants was strong and because the statements actually used were relatively innocuous. *Carvey v. LeFevre,* 611 F.2d 19, 23 (2d Cir.1979), *cert. denied,* 446 U.S. 921, 100 S.Ct. 1858, 64 L.Ed.2d 276 (1980); *United States v. Duvall,* 537 F.2d at 25–26.

■ Moreover, even assuming the error was not harmless, we would nevertheless be left with the fact that Edler's statements in the interview were used at trial only on his cross-examination. It has been held that while evidence obtained in violation of a defendant's *Miranda* rights is subject to suppression from use in the government's case in chief, it may nevertheless be used to cross-examine the defendant. *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *see also United States v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980) (same for evidence obtained in violation of fourth amendment); *cf. New Jersey v. Portash,* 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979) (if use of defendant's prior statements would clearly violate his fifth amendment right against self-incrimination, statements not admissible on cross-examination); *United States v. Brown,* 699 F.2d 585, 588–91 (2d Cir. 1983) (evidence obtained in violation of defendant's express sixth amendment right to counsel not admissible on cross-examination). Whether that principle should govern in the present context is a close question which has been neither briefed nor argued. One might think at first blush that if a statement obtained in violation of *Miranda* rights or the fourth amendment can be used to impeach a defendant, then *a fortiori* one obtained merely in breach of ethical principles could be similarly employed. However, the issue is not as simple as first appears because of the unique chilling effect the pre-arraignment interview may have on a defendant's right to

testify, particularly when combined with the potentially discriminatory impact the Southern District's policy may have upon indigent defendants. We hope that restraint by the United States Attorney will make it unnecessary for us to explore these difficult issues in the future.

The judgments of conviction are affirmed.

LUMBARD, Circuit Judge, concurring:

Although I concur in affirmance of the convictions, I would rest the decision on somewhat different grounds.

I agree that the AUSA should have refrained from questioning Edler at the pre-arraignment interview once he knew that the Legal Aid assigned counsel had requested that there be no questioning. But I cannot agree that the introduction at trial of the statements obtained during the interview was harmless. Nonetheless I would hold that the evidence was properly admitted on cross-examination under *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

Two statements are at issue here. First, Edler testified at trial that when the customs officers stopped him on the pier holding a duffel bag full of cheese, the bag had just fallen off the truck. He stated that he picked it up with no idea of its contents, and carried it *three* or *four* feet from the truck to determine if it was garbage to be thrown out, or goods to be placed on the ship. On cross-examination, that testimony was impeached with Edler's pre-arraignment statement to AUSA Sobol that he had carried the duffel bag *thirty* feet from where it lay when he found it. Second, Edler testified at trial that at about 5 P.M. on the day in question, he drove his own car onto the pier and left it there, returning later that night to drive Foley's car home for him, as Foley was too drunk to drive it himself. On cross-examination, that testimony was impeached with Edler's pre-arraignment statement to AUSA Sobol, in response to the question how his car came to be on the pier that night, that "probably Abie the Jew brought it on."

My colleagues conclude that any error in introducing those statements on cross-examination of Edler was harmless, because all the other evidence against both defendants was strong, and the statements themselves were "relatively innocuous." As to the testimony concerning the distance

Edler carried the bag containing the cheese, I agree, as the fact itself is too insignificant to infer any intentional misrepresentation from the inconsistency. But as to the question of how Edler's car came to be on the pier that night, I respectfully disagree. The introduction of the prior inconsistent statement on that question made Edler out to be an egregious liar on an important matter relevant to his guilt. Even if neither of the accounts is particularly more incriminating than the other, the inconsistency could only be construed as intentional, and strongly suggests Edler's own perception that he had something to hide.

Consequently, in my opinion it would have been reversible error had the government been permitted to use the statement in its direct case. However, as the government used the statements only on cross-examination, I would conclude that under *Harris v. New York, supra,* such use was not reversible error, and would affirm the conviction on that basis.[1]

In addition, I think the court should refrain from comment on the general propriety of pre-arraignment interviews. The United States Attorney is undoubtedly aware that where, as in this case, the interview is conducted in an improper manner or occasions too long a delay in arraignment, the use of any fruits of that interview may be jeopardized. As individual allegations

of impropriety come before us, we act on the facts of the case, in accordance with applicable law, and that should be enough. Unless we are prepared to hold that pre-arraignment interviews are categorically barred—which on at least four occasions we have stopped short of doing, *see* majority opinion, *supra; United States v. Perez,* 733 F.2d 1026, 1036 (2d Cir.1984); *United States v. Mohabir,* 624 F.2d 1140, 1150–51 (1980); *United States v. Duvall,* 537 F.2d 15, 23, *cert. denied,* 426 U.S. 950, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976)—I think little is to be gained by general exhortations in that direction.

Furthermore, I do not believe any sweeping prohibition is justified or is wise. Not infrequently, a pre-arraignment interview results in a modification of the charge to be filed or even some arrangement to postpone or forego charges entirely in return for cooperation with the government. Such a development may well be to the advantage of the detainee as well as to the government. The mere fact that some prospective defendants may in the course of the interview make damaging statements or commit themselves to a story that restricts their options at trial hardly seems to me a persuasive counterargument, as long as other procedural safeguards—e.g., administering a *Miranda* warning and respecting the requests of counsel to stop questioning the detainee—are followed.

---

**1.** Had AUSA Sobol's interrogation of Edler taken place after arraignment, his failure to cease the interrogation after counsel had so requested would have violated Edler's Sixth Amendment right to counsel, and any evidence obtained would have been inadmissible on cross-examination, as well as in the government's case in chief. *See United States v. Brown,* 699 F.2d 585, 588–91 (2d Cir.1983); *cf. New Jersey v. Portash,* 440 U.S. 450, 459, 99 S.Ct. 1292, 1297, 59 L.Ed.2d 501 (1979) (evidence obtained in violation of defendant's Fifth Amendment right against self-incrimination inadmissible on cross-examination). But as formal charges had not yet been filed, Edler's Sixth Amendment right to counsel had not yet attached. *See United States v. Kirby,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *United States v. Mohabir,* 624 F.2d 1140 (2d Cir.1980).

However, the interrogation of Edler in contravention of counsel's specific request did violate the right to counsel created by the Court in *Miranda,* "not to vindicate the constitutional right to counsel as such, but * * * 'to guarantee full effectuation of the Fifth Amendment privilege against self-incrimination * * *' *Johnson v. New Jersey,* 384 U.S. 719, 729, 86 S.Ct. 1772,

1779, 16 L.Ed.2d 882 (1966)." *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). This conclusion presumes that counsel as an agent of the defendant may assert defendant's *Miranda* rights to have counsel present, at least until that assertion is knowingly and directly repudiated by defendant. However, I think that presumption is implicit in cases holding that pre-arraignment interrogation of a defendant without counsel present, despite counsel's specific request to be present, is a violation of defendant's Fifth Amendment rights, even when defendant has himself knowingly waived his right to counsel. *See United States v. Miller,* 432 F.Supp. 382 (W.D.N.Y.1977); *United States v. Howard,* 426 F.Supp. 1067, 1071 (W.D.N.Y.1977); *cf. United States v. Wedra,* 343 F.Supp. 1183, 1185 (S.D.N.Y.1972); *United States ex rel. Magoon v. Reincke,* 304 F.Supp. 1014, 1019 (D.Conn.1968), *aff'd,* 416 F.2d 69 (2d Cir.1969) (same with regard to defendant's Sixth Amendment right to counsel). But as evidence obtained in violation of a defendant's *Miranda* rights is admissible on cross-examination under *Harris v. New York, supra,* such use here was not reversible error.