**UNITED STATES of America,**

v.

**Jose RAMOS, Defendant.**

**No. 85 Cr. 4 (SWK).**

United States District Court,
S.D. New York.

March 26, 1985.

10. Scott appears to have been the least senior    brake mechanic.

Rudolph W. Giuliani, U.S. Atty., S.D. New York by Robert L. Folks, Asst. U.S. Atty., New York City, for United States.

Caesar D. Cirigliano, The Legal Aid Society, Federal Defenders Services Unit by Jack Lipson, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

The defendant, Jose Ramos, has moved pursuant to Rule 41 of the Federal Rules of Criminal Procedure to suppress as evidence post-arrest statements made by him to Assistant United States Attorney Robert L. Folks prior to his presentment before a United States Magistrate. For the reasons stated below, the motion to suppress is DENIED.

## BACKGROUND

Mr. Ramos was arrested at approximately 4:00 p.m. on December 13, 1984, in the vicinity of West 111th Street and St. Nicholas Avenue, for allegedly steering an undercover agent to a seller to purchase cocaine. He was taken to the 26th Police precinct, at 530 West 126th Street, for processing. There, he was fingerprinted, photographed, and interviewed by the arresting officers regarding his name, age, address, etc.

At 8:50, some five hours after his arrest, he was interviewed at the 26th Precinct by Assistant United States Attorney Folks for a period of twenty minutes. At this interview, Mr. Ramos was advised by AUSA Folks that he had a right to remain silent and a right not to answer any questions. He was further advised that he had a right to counsel; that, if he could not afford one, an attorney would be appointed for him; and that an attorney could be appointed before the interview and could be present during the interview if desired. After each statement of rights, Mr. Ramos was asked if he understood the statement. Mr. Ramos responded, in most cases with a nod,

that he understood all the rights described.[1] Mr. Ramos was then asked questions about his background. Thereafter, Mr. Ramos was asked questions, and made certain statements, relating to the conduct for which he was arrested. Following the interview, Mr. Ramos was taken to the Metropolitan Correctional Center, where he was held overnight.

The next day, Mr. Ramos was processed by the United States Marshal's Service and interviewed by a Pretrial Services Officer, who prepared a written report. Some time that afternoon, he was taken to the United States Magistrate's courtroom, where, for the first time, he spoke to the attorney appointed to represent him. He was presented before a Magistrate at 2:30 p.m.

Mr. Ramos was formally charged in a two count indictment, handed up on January 4, 1985, with the alleged conduct which led to his arrest on December 13, 1984. Mr. Ramos was arraigned on January 11, 1985, on the charges contained in that indictment, and pled not guilty. The case was assigned to me. This motion to suppress the statements Mr. Ramos made to AUSA Folks in the interview the night before his presentment ensued.

## DISCUSSION

■ The admissibility of confessions is governed by section 3501, Title 18 United States Code. Section 3501(a) provides that a confession shall be admissible in evidence "if it is voluntarily given." There is no allegation here that Mr. Ramos gave his statements to Mr. Folks other than voluntarily. Moreover, section 3501(c) provides that a confession *may* be suppressed if more than six hours have elapsed between the arrest and the making of the confession, unless the delay is found to have been reasonable. *United States v. Perez*, 733 F.2d 1026 (2d Cir.1984). In *Perez*, Judge Weinfeld had suppressed statements sim

ilar to those at issue here because they were made in an interview with an AUSA some eight hours after arrest, and because the delay in presenting the defendant before a magistrate, almost twenty-four hours after arrest, was unreasonable. *Id.*, *aff'g United States v. Toney*, 579 F.Supp. 652 (S.D.N.Y.1984). Mr. Ramos's statements were made approximately five hours after his arrest, so they do not fall within this provision. Under the governing statute, therefore, Mr. Ramos's statements would not be suppressed. *See Toney*, 579 F.Supp. at 656 ("A statement obtained within six hours of arrest is not inadmissible solely because of pre-arraignment delay, under 18 U.S.C. § 3501(c).").

The defendant nevertheless argues that these statements should be suppressed. Mr. Ramos challenges the practice of pre-presentment interviews of arrested persons followed by the United States Attorney's Office in this district[2] on two grounds: first, that it causes unnecessary delay in the presentment of arrested persons before a United States Magistrate, in violation of Rule 5(a) of the Federal Rules of Criminal Procedure; second, that it prevents indigent defendants like himself from intelligently and knowingly exercising or choosing to waive their Fifth and Sixth Amendment rights with the benefit of advice from a neutral judicial officer, and is therefore unconstitutional.

Rule 5(a) of the Federal Rules of Criminal Procedure provides in pertinent part that "any person making an arrest without a warrant shall take the arrested person *without unnecessary delay* before the nearest *available* federal magistrate" (emphasis added). Courts, enforcing Rule 5(a) (and its predecessor statutes), had long held that the violation of a defendant's right to prompt presentment before a magistrate required the suppression of any confessions made by the defendant after arrest. *See Mallory v. United States*, 354

---

1. A copy of the advice of constitutional rights portion of the interview form used by AUSA Folks in this case is attached as Appendix A.

2. Apparently, the United States Attorney's Office for the Southern District of New York is the only prosecutors's office which employs this practice. *See United States v. Foley*, 735 F.2d 45, 47–48 (2d Cir.1984).

U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943). This exclusionary rule, derived from the court's "supervisory authority over the administration of criminal justice in the federal courts," *id.,* 318 U.S. at 341, 63 S.Ct. at 613, is known as the *McNabb-Mallory* rule.

Defendant argues here that the general practice of the United States Attorney's Office in interviewing defendants prior to presentment perforce unnecessarily delays that presentment in violation of Rule 5(a). Essentially, defendant is urging this Court to apply the *McNabb-Mallory* rule to all pre-presentment interviews and suppress any confessions derived therefrom. Congress, however, in enacting section 3501(c), has restricted the application of the *McNabb-Mallory* rule. *See Perez,* 733 F.2d at 1035. As discussed above, pre-confession delays of less than six hours no longer lead to the suppression of confessions solely based on delay. Thus, Rule 5(a) and section 3501(c) are *in pari materia* and must be construed together. Rule 5(a) cannot be said to have been violated when the AUSA interview, and the resultant confession, occurs within six hours of arrest, at least not, as here, where that interview in no way affects the speed with which the defendant is presented before a magistrate.[3]

■ Even if the application of section 3501(c) does not preclude the suppression of Mr. Ramos's confession under Rule 5(a), the delay in presenting Mr. Ramos before a magistrate was not unnecessary. He was arrested late in the afternoon, and his processing at the police precinct evidently took some time. By the time the standard, appropriate processing at the police precinct was completed, there was no Magistrate or Pretrial Services Officer on duty before whom Mr. Ramos could have been taken. Accordingly, it was necessary to hold him

overnight, and defer processing him to the next morning. Lodging a defendant overnight because no magistrate is available does not constitute an unnecessary delay in bringing the defendant before a magistrate. *United States v. Marrero,* 450 F.2d 373, 378 (2d Cir.1971), *cert. denied,* 405 U.S. 933, 92 S.Ct. 991, 30 L.Ed.2d 808 (1972). The interview objected to here, conducted at 8:50 p.m., prior to lodging Mr. Ramos for the night, in no way affected the time that Mr. Ramos was presented before a magistrate. Thus, the practice followed here did not violate Rule 5(a).

■ The constitutional objections to the practice of the United States Attorney's Office that is being challenged here raise harder issues. As counsel for Mr. Ramos notes in his memorandum of law, the practice of having Assistant United States Attorneys interview arrested persons before their presentment before a magistrate, where at least one purpose of the interview is to obtain confessions, has been criticized repeatedly by the Second Circuit. *United States v. Foley,* 735 F.2d 45 (2d Cir.1984); *Perez,* 733 F.2d at 1036; *United States v. Mohabir,* 624 F.2d 1140, 1150 (2d Cir.1980); *United States v. Duvall,* 537 F.2d 15, 23 (2d Cir.), *cert. denied,* 426 U.S. 950, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976); *see also United States v. Restrepo-Cruz,* 547 F.Supp. 1048, 1060–62 (S.D.N.Y.1982); *but see United States v. Ortega,* 471 F.2d 1350, 1362 (2d Cir.1972) (Medina, J.), *cert. denied,* 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973). The Second Circuit in these cases has noted its concern that the practice may unconstitutionally impinge a defendant's exercise of his Fifth and Sixth Amendment rights. Moreover, since the interviews perforce are only conducted with unrepresented defendants, *see Foley,* 735 F.2d at 48; *see also* Disciplinary Rule 7–104(A)(1) of the ABA Code of Professional Responsibility, it is likely that this ad-

---

**3.** Apparently, it is the practice of the United States Attorney's Office to forego a pre-presentment interview when that interview may mean the difference between presentment before a magistrate on the same day or the following morning, irrespective of whether the interview

itself would be conducted within six hours of the arrest. *See Perez,* 733 F.2d at 1036. Any other practice could conceivably implicate a defendant's Rule 5(a) rights notwithstanding section 3501(c), but that question is not before this Court.

verse impact falls mainly on indigent defendants, who must often wait until their presentment for counsel to be assigned to them. This makes the practice still more troubling. *See Foley,* 735 F.2d at 48; *Restrepo-Cruz,* 547 F.Supp. at 1061. In each of these cases, however, the court has stopped short of holding such pre-presentment interviews unconstitutional.[4]

I, too, am troubled by this practice, and hesitate to rush in where the Second Circuit has thus far refused to reach. Nonetheless, a resolution of these difficult constitutional issues is necessary for the resolution of this motion. After a careful review of the arguments enunciated by the courts in their criticism of this practice, I find that the practice is not unconstitutional.

The Fifth Amendment protects against compelled self-incrimination. In assuring that law enforcement personnel observe that constitutional safeguard, the Supreme Court has established certain requirements which must be followed before an arrested individual can be questioned. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In short, the Fifth Amendment requires that an arrested individual be advised that he has the right to remain silent, that any statement he does make may be used against him, and that he has the right to have counsel (appointed if necessary) present during any interrogation. *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612. The Fifth Amendment right to the presence of counsel, like the rest of the rights protected by the *Miranda* warnings, may be waived, provided the waiver is made voluntarily, knowingly, and intelligently. *See Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612; *see also Edwards v. Arizona,* 451 U.S. 477, 482–83, 101 S.Ct. 1880, 1883–84, 68 L.Ed.2d 378 (1981); *North Carolina v. Butler,* 441 U.S. 369, 372–76, 99 S.Ct. 1755, 1756–59, 60 L.Ed.2d 286 (1979); *cf. Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (defend-

ant has absolute right to proceed without a lawyer).

■ Defendant argues that the practice of pre-presentment interviews precludes an intelligent and knowing exercise, and, accordingly, an intelligent and knowing waiver, of constitutional rights. To hold thus would render meaningless the express holding of *Miranda* that such rights may be waived. To be sure, these interviews are "peculiarly likely to run afoul of *Miranda.*" *Duvall,* 537 F.2d at 24. This, however, does not compel invalidating the process entirely, which would be, I believe, an unprecedented, and unjustified, extension of *Miranda.* Rather, prosecutors conducting, and courts reviewing, these interviews must be particularly scrupulous in assuring that the cautions and requirements of *Miranda* are observed. *See Duvall,* 537 F.2d at 24. The Second Circuit has specifically held that a defendant may validly waive his right to have counsel present at one of these interviews, as long as the *Miranda* safeguards are observed. *United States v. Armedo-Sarmiento,* 545 F.2d 785, 792 (2d Cir.1976), *cert. denied,* 430 U.S. 917, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977); *cf. Ortega,* 471 F.2d at 1362 (affirming then District Judge Pierce's finding that *Miranda* satisfied); *Marrero,* 450 F.2d at 379 (Friendly, C.J.) (concurring opinion) (*Miranda* satisfied). The Court, therefore, declines to hold that the general practice violates a defendant's Fifth Amendment rights. A case-by-case review is required to assure that, in the specific case, the *Miranda* safeguards have been strictly observed. *See Edwards v. Arizona,* 451 U.S. at 482–83, 101 S.Ct. at 1883–84 (validity of waiver "depends in each case 'upon the particular facts and circumstances surrounding that case' ") (*quoting Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

■ In this case, I hold that the defendant was properly advised of his *Miranda* rights. The form questions recited to Mr.

---

**4.** In a concurring opinion in *Foley,* Judge Lumbard decried the court's general exhortations against the practice without a ruling that the practice was unconstitutional, a ruling which he indicated he felt was unjustified and ill-advised. 735 F.2d at 50.

Ramos are sufficient under *Miranda*. *See Mohabir*, 624 F.2d at 1147 (*Miranda* warnings and questions, which did not differ from those employed in this case in any material aspect, 624 F.2d at 1149 n. 7, "satisfied Fifth Amendment standards"). After receiving the proper warnings, Mr. Ramos voluntarily answered the questions. He does not allege that anything was said to him which deviated from the form questions. *Compare Armedo-Sarmiento*, 545 F.2d at 792 (AUSA warned of possible lengthy sentence); *Duvall*, 537 F.2d at 24–25 (AUSA warned of possible sentence of a hundred years). Therefore, I hold that the requirements of *Miranda* were observed in this case and that the pre-presentment interview of Mr. Ramos did not violate his Fifth Amendment rights.

■ Mr. Ramos also argues that the practice of conducting pre-presentment interviews violates a defendant's Sixth Amendment right to counsel. I do not agree. A defendant is entitled to counsel, under the Sixth Amendment, at any "critical stage" of the criminal proceedings against him. *See Simmons v. United States*, 390 U.S. 377, 382, 88 S.Ct. 967, 970, 19 L.Ed.2d 1247 (1968); *Hamilton v. Alabama*, 368 U.S. 52, 54, 82 S.Ct. 157, 158, 7 L.Ed.2d 114 (1961). However, that right has been held to have attached only after the formal initiation of adversary judicial criminal proceedings. *See Kirby v. Illinois*, 406 U.S. 682, 688–89, 92 S.Ct. 1877, 1881–82, 32 L.Ed.2d 411 (1972) ("points of time at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment"); *see also, e.g., Brewer v. Williams*, 430 U.S. 387, 398–99, 97 S.Ct. 1232, 1239–40, 51 L.Ed.2d 424 (1977) (indictment); *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (preliminary hearing to test sufficiency of evidence and fix bail);

*White v. Maryland*, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) (preliminary hearing for entry of plea); *Hamilton v. Alabama*, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961) (arraignment). The right has not been held to have attached prior to the formal initiation of such proceedings. *See Kirby*, 406 U.S. 682, 92 S.Ct. 1877 (plurality opinion) (right does not extend to line-up conducted after arrest, but before arraignment or indictment); *Duvall*, 537 F.2d at 22 (right not attached after arrest based on complaint filed for purpose of obtaining arrest warrant, but before arraignment); *United States v. Ramirez*, 482 F.2d 807, 815 (2d Cir.) (Sixth Amendment not extended to pre-presentment statement made to AUSA in absence of indictment or prior appointment of counsel), *cert. denied*, 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 475 (1973). As the Supreme Court stated:

> The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse position of government and defendant have solidified.

*Kirby v. Illinois*, 406 U.S. at 689, 92 S.Ct. at 1882. These cases make clear that the Sixth Amendment right to counsel does not attach prior to the formal commencement of judicial criminal proceedings. The statements at issue herein were obtained from Mr. Ramos at a point prior to the formal commencement of criminal proceedings against him. Accordingly, his Sixth Amendment right to counsel was not yet implicated.[5]

■ This, however, does not necessarily dispose of defendant's Sixth Amendment claims. Mr. Ramos apparently argues that the practice chills the full exercise of the right to counsel and allows the government to take unfair advantage of the individual's

---

5. The Court notes that Mr. Ramos was not without other constitutional safeguards prior to the attachment of his right to counsel under the Sixth Amendment. *See Kirby*, 406 U.S. at 690–91, 92 S.Ct. at 1882–83 (Due Process Clause of Fifth Amendment); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 199 (1967) (Due Process Clause of Fourteenth Amendment); *Miranda*, 384 U.S. 436, 86 S.Ct. 1602 (Fifth Amendment Right to counsel). Those rights, however, were not violated here.

uncounseled status. *See Foley,* 735 F.2d at 48. I do not agree. There are legitimate reasons why this interview should take place before the formal commencement of criminal proceedings. As Judge Knapp pointed out, "before the prosecution has taken shape—there may be reasons why a suspect might rationally wish to deal with agents without the intervention of counsel. By getting in their good graces and being useful to the government he might be able altogether to avoid indictment or any legal entanglement." *United States v. Satterfield,* 417 F.Supp. 293, 296 (S.D.N.Y.), *aff'd,* 558 F.2d 655 (2d Cir.1976). The practice of pre-presentment interviews, *inter alia,* enables an arrested individual to avoid criminal prosecution entirely, either by cooperating with the government or by uncovering weaknesses in the government's case (procedural, such as violations by the arresting officers, or substantive). *See Foley,* 735 F.2d at 48 (listing "salutary purposes" served by interviews prior to "commitment to prosecute"). Accordingly, I find that the practice of interviewing arrested persons prior to the formal commencement of criminal proceedings, and prior to the appointment of counsel, is not, on its face, unconstitutional under the Sixth Amendment, and that AUSA Folk's interview did not violate Mr. Ramos's rights.

In sum, I find that Mr. Ramos's statements are admissible within the governing statute, 18 U.S.C. § 3501; that there was no unnecessary delay in presenting him before a magistrate in violation of Fed.R. Crim.P. 5(a); that the practice of pre-presentment interviews is not unconstitutional; that Mr. Ramos's constitutional rights were properly safeguarded in this case; and that he made a knowing and voluntary waiver of his *Miranda* rights. Accordingly, his motion to suppress is DENIED.[6]

SO ORDERED.

APPENDIX A

NAME OF DEFENDANT _Jose Ramos_ .

## STATEMENT OF DEFENDANT BEFORE ARRAIGNMENT MADE TO ASSISTANT UNITED STATES ATTORNEY

Date: _12/18_

Time Interview Commenced: _____ a.m _950_ p.m.

My name is _Folk_ , I am an Assistant United States Attorney. You have been arrested for a violation of _Fed_ which relates to _UARCO Draw_
In a few minutes you will be taken before the United States Magistrate *who will fix bail in your case.*
Do you understand that? _prod yes_

---

**6.** Defendant has also asked this Court to invoke its inherent supervisory authority over the administration of criminal justice in the federal courts to prohibit this practice, unique to this district. I decline, at this time, to intrude upon the prosecutorial functions of the United States Attorney's Office or impinge the United States Attorney's exercise of prosecutorial discretion. In *Toney,* Judge Weinfeld expressed no opinion on the practice, in the absence of a definitive ruling from the Second Circuit on the subject, except to encourage a determination by a higher authority. 579 F.Supp. at 657 n. 11. I, too, would encourage a ruling from a higher authority. I also note that the Court, as a whole, is currently contemplating a revised plan for implementing the Criminal Justice Act, 18 U.S.C. § 3006A, which, if adopted in its present form (Section VII.A. in particular) would essentially preclude the practice. I express no opinion, however, at this time on that proposal.

You have a constitutional right to refuse to answer any of my questions.
Do you understand? *nod yes*

You have an absolute right to remain silent, and if you choose to answer any questions, any statement you do make can be used against you in a court of law.
Do you understand that? *nod yes.*

You have a right to consult an attorney and to have that attorney present during this interview.
Do· you understand that? *nod yes*

If you do not have funds to retain an attorney, an attorney will be appointed to represent you and you do not have to answer any questions before this attorney is appointed and you can consult with him.
Do you understand that? *yes*

Would you like to answer some questions? You may pick and choose those questions you wish to answer and may stop at any time.
Do you understand that?