**UNITED STATES of America**

v.

**Mohammad Rafiq KHAN and Mohammad Shakeel, Defendants.**

**No. SSS 85 Cr. 481 (SWK).**

United States District Court, S.D. New York.

Jan. 8, 1986.

Rudolph W. Giuliani, U.S. Atty., New York City by Peter B. Sobol, Asst. U.S. Atty., for the U.S.

Federal Defender Services Unit, New York City by Leonard F. Joy, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

### Factual Background

On May 3, 1985 Agent Michael Levine of the Drug Enforcement Administration ("DEA") paid defendant Mohammad Rafiq Khan ("Khan") $30,000.00 in pre-marked bills for heroin which Khan had delivered to Levine on April 29, 1985. According to the government, Khan was not arrested when he received payment because he had agreed to deliver to Levine another shipment of heroin on May 4, 1985.

After Khan received the $30,000.00 payment, he was placed under surveillance by other DEA agents. Khan was followed to apartment 2F, located at 87–74 150th Street, Jamaica, New York. Although Khan had earlier represented to certain agents that this apartment was one of his residences, the agents later learned it was owned by Khan's co-defendant, Mohammad Shakeel ("Shakeel").

At approximately 12:00 p.m. on May 4, 1985, DEA Agent Dick L. Musso and Assistant United States Attorney ("AUSA") Peter Sobol ("Sobol") made a telephonic application for a search warrant to United States Magistrate John Caden ("Caden"), who sits in the Eastern District of New York. Caden issued a warrant which authorized the search of Shakeel's apartment for the $30,000.00. During the telephone call, Caden agreed that the agents could apply for a supplemental warrant if they saw "other contraband or evidence of narcotics dealing" in plain view.

At approximately 5:00 p.m. on May 4, 1985, Khan sold Agent Levine an additional 500 grams of heroin at a prearranged location. While conducting the sale, Khan told Levine that additional heroin was located in Shakeel's apartment. After providing Levine with the heroin, Khan returned to Shakeel's apartment, where he was arrested at approximately 6:00 p.m.

At approximately 6:30 p.m., the DEA agents executed the warrant and searched

Shakeel's apartment.[1] While conducting the search, the agents removed a sheet draped over a coffee table and discovered narcotics paraphernalia in plain view. The agents also discovered a black gym bag, which was originally used by Agent Levine to carry the $30,000.00 in cash, as well as passports and other travel information.

After discovering this evidence, DEA agent John Ozaluk ("Ozaluk") applied to Caden for a supplemental warrant authorizing a broader search. Caden issued a supplemental warrant at approximately 8:20 p.m. Before the search was completed, Shakeel arrived at his apartment. After Shakeel responded to the agents' questions, he was placed under arrest.

Shakeel was arrested at approximately 7:30 p.m. on Saturday, May 4, 1985, and was interviewed by AUSA Sobol at approximately 2:00 p.m. on Monday, May 6, 1985. During this interview, Shakeel made some incriminating statements. Shakeel was not arraigned[2] before a United States Magistrate until 3:00 p.m. on Monday, more than 43 hours after his arrest. The facts relating to Shakeel's arrest and post-arrest statement are not in dispute.

Shakeel moves to suppress the evidence seized in his apartment pursuant to Fed.R. Crim.P. 12 and 41. Shakeel also moves pursuant to Rule 12 to suppress the statements he made to Sobol, on the grounds that they were obtained in violation of 18 U.S.C. § 3501(c) and Fed.R.Crim.P. 5(a).

A. *Shakeel's Motion to Suppress the Evidence Seized in the Search*

Shakeel argues that there was no probable cause to search for the $30,000.00, "at least in the absence of surveillance to determine that Khan had not left the [apartment]" after returning with the payment. Affidavit of Leonard F. Joy, sworn to on August 12, 1985, at p. 3. Secondly, Shakeel contends that the agents obtained the

search warrant for $30,000.00 as a pretext to search the apartment for drugs and narcotics paraphernalia. He argues that the search of his apartment was unreasonable and that all the items were seized in violation of the Fourth Amendment.

■ Shakeel's first argument is unpersuasive. The agents had sufficient probable case to believe that the cash was located in Shakeel's apartment. After Levine paid Khan $30,000.00, which was placed in a black gym bag, Khan was followed to the apartment by the DEA agents. The agents observed Khan entering the apartment with the black bag.

Even if the agents lacked probable cause, the recently formulated good faith exception to the exclusionary rule precludes suppressing the items seized in the instant case. *See United States v. Leon,* — U.S. —, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The agents and the Magistrate proceeded in good faith. *See United States v. Fama,* 758 F.2d 834 (2d Cir.1985). Shakeel has not claimed that Caden abandoned his neutral role as a magistrate. Nor has Shakeel argued that the DEA agents were dishonest or reckless in preparing the affidavit. Thus, no grounds for suppression of the items seized exist.

■ Shakeel's second argument is similarly unpersuasive. Shakeel argues that the search warrant pertaining to the $30,000.00 payment was used as a pretext to search the apartment for narcotics. Shakeel contends that the DEA could have arrested Khan after giving him $30,000.00, but waited until Khan returned to the apartment to legitimize the search.

There is no basis to support Shakeel's allegation that the search warrant was used as a pretext. Moreover, the government has adequately explained the reason

---

**1.** Counsel for the government contends that Khan was present, after his arrest, when the apartment was searched.

**2.** Fed.R.Crim.P. 5(a) does not speak of "arraignments." "Courts, like members of the bar generally, continue to use the term, undoubtedly out of habit. When used herein, the term refers to the suspects' initial presentment to a magistrate contemplated by Rule 5." *United States v. Perez,* 733 F.2d 1026, 1027 n. 1 (2d Cir.1984).

for the delayed arrest: Khan had agreed to deliver another shipment of heroin on May 4, 1985.

Not only does Shakeel fail to provide factual evidence to support his claim,[3] but the cases cited to support his position are inapposite. Two of these cases, *McKnight v. United States*, 183 F.2d 977 (D.C.Cir. 1950) and *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), involve the improper use of an *arrest* warrant to conduct a search of a house.

This Court rejects Shakeel's contention that *McKnight* is "remarkably similar" to the instant action. In *McKnight,* the police delayed in executing an *arrest* warrant. The police waited until the subject of the warrant entered a house before breaking into the house to execute the arrest warrant and to conduct a search. Similarly, in *Steagald,* the Supreme Court precluded the search of a third party's home to execute an *arrest* warrant. In both of these cases, the police did not have a valid search warrant.

Conversely, in the instant action, the DEA agents were legitimately on the premises pursuant to a valid *search* warrant. While conducting the search of apartment 2F, the agents found incriminating evidence in plain view which they properly seized. *See Coolidge v. New Hampshire,* 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971) ("An example of the applicability of the 'plain view' doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character.") (citations omitted); *United States v. $10,000 In U.S. Currency,* 780 F.2d 213, 217, (2d Cir.1986). In conclusion, Shakeel's motion to suppress the evidence seized pursuant to the search warrant is denied.

**3.** Shakeel has not submitted an affidavit by someone with personal knowledge of the facts. Accordingly, no evidentiary hearing was held.

*Shakeel's Motion to Suppress the Post-Arrest Statements*

Shakeel argues that statements he made to AUSA Sobol on late Monday afternoon, after over 42 hours of confinement, were obtained as a result of pre-arraignment delay, in violation of Fed.R.Crim.P. 5(a) and 18 U.S.C. § 3501(c). For the reasons stated below, this motion is granted.

An officer making an arrest:

*shall take the arrested person without unnecessary delay* before the nearest available federal magistrate or, in the event that a federal magistrate is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. § 3401.

Fed.R.Crim.P. 5(a) (emphasis added).

When, as in the instant case, a defendant makes a confession prior to his presentment before a magistrate, the defendant may challenge the admissibility of the confession pursuant to 18 U.S.C. § 3501(c). Congress has created a remedy which provides that a confession shall not be inadmissible solely because of delay in bringing the suspect before a magistrate if, *inter alia,* such confession was given by the suspect within *six* hours following his arrest.

Section 3501(c) also provides that this six hour time limitation shall not apply where the delay in bringing the suspect before a magistrate beyond the six hour period is found by the trial judge to be *reasonable* considering the means of transportation and distance traveled to the nearest available magistrate. *Id.* Because the Court is resting its decision on this portion of the statute, it will not reach the issue of the voluntariness of Shakeel's statement. *See* 18 U.S.C. § 3501(a) and (b).

Section 3501(c) and Rule 5(a) were analyzed in *United States v. Perez,* 733 F.2d 1026 (2d Cir.1984). In *Perez,* one of the

At a pre-trial conference held subsequent to the filing of the motion, it was not disputed by

defendants [4], Perez, was arrested at 3:25 p.m. on a Friday evening, "processed" at a DEA office until 4:45 p.m., and placed in a holding cell. Although a magistrate was available until 6:15 p.m.,[5] the agents failed to have Perez arraigned. At 10:00 p.m., the agents transported Perez to the United States Attorney's Office. At 11:20 p.m., in an interview conducted by an AUSA, Perez made a lengthy inculpatory statement. Perez then spent the night in a cell at the Metropolitan Correctional Center ("MCC").

At 9:00 a.m. on Saturday, Perez was brought from the MCC to the United States Courthouse. Throughout the morning, he was processed by the United States Marshals for the purpose of obtaining the same "pedigree" information Perez had given to the DEA agents on the previous day. It was not until 2:30 p.m., 23 hours after his arrest, that Perez first appeared before a magistrate.

The Court in *Perez* determined the plain meaning of 18 U.S.C. § 3501(c) to be "if a defendant confesses more than six hours after the time of arrest and has not yet been arraigned, the delay in and of itself may justify suppression" if the trial judge finds the delay to be unreasonable. *Id.* at 1031. A delay in excess of six hours, standing alone, does not require suppression, however.

The Court affirmed the trial judge's determination that the delay in arraigning the defendant was unreasonable. After Perez had been processed at DEA headquarters, a magistrate was available for arraignment. Yet, the government advanced no persuasive reason why Perez was not arraigned after he was processed. Additionally, the trial judge noted that although one of the DEA agents subsequently appeared before a magistrate to apply for a search warrant, the government did not explain why it failed to arraign Perez at that time. The trial judge reasoned that the government, with its available manpower, could have both searched the apartment pursuant to the search warrant and presented Perez to a magistrate in a prompt manner. The Second Circuit concluded that the DEA Agents had no legitimate excuse for not arraigning Perez promptly. *Id.* at 1036. The Court also noted that the trial judge refrained from reaching the issue of the voluntariness of the statement. The Court in the instant case similarly concludes that it is unnecessary to address the voluntariness issue.

■ This Court finds that the delay in arraigning Shakeel was unreasonable and that the statements made during his interview with AUSA Sobol should be suppressed. The facts in the instant action are far more egregious than those in *Perez.* Shakeel was held 43 hours before being arraigned, 20 hours longer than Perez. Shakeel was also confined for over 42 hours before being interrogated by the AUSA. The government offers no valid explanation for this intolerable delay. There was no problem presented in the instant case by the distance to be traveled and the means of transportation available to bring Shakeel before the nearest available magistrate. A mere walk from the M.C.C. to the courthouse was sufficient.

The government also failed to show that, pursuant to Rule 5(a), it attempted to bring

---

Shakeel's counsel that Shakeel was not entitled to an evidentiary hearing on this motion.

**4.** The government argues that Perez's co-defendant, Negron, unsuccessfully moved to suppress his pre-arraignment statements. However, Negron conceded that a magistrate was unavailable after he was arrested and that his overnight incarceration at the MCC was a "necessary delay." *United States v. Toney,* 579 F.Supp. 652, 656 (S.D.N.Y.1984), *aff'd sub nom. United States v. Perez,* 733 F.2d 1026 (2d Cir.1984). Shakeel concedes neither point.

Moreover, Negron was arrested at 5:30 p.m. on Friday, and was not interviewed by the AUSA until Saturday *morning.* Conversely, Shakeel was confined for two nights in the MCC and was not interviewed by the AUSA until approximately 2:00 p.m. on Monday.

**5.** Arraignments on Saturdays in the United States District Court for the Southern District of New York generally occur before a United States Magistrate until noon. Arraignments do not occur again until 10:00 a.m. on Monday. *United States v. Rubio,* 709 F.2d 146, 149 n. 2 (2d Cir.1983).

Shakeel before a state or local judicial officer authorized by 18 U.S.C. § 3041. The government is silent on this point. Even if the government had shown that neither a state nor a local judicial officer was available, however, the delay was still unreasonable, since the defendant was not arraigned until very late Monday afternoon.

As noted earlier, the government's explanation of why Shakeel was not arraigned until 3:00 p.m. on Monday is unacceptable. The government argues:

> From SHAKEEL's arrest on Saturday evening to his interview on Monday afternoon, delay during the entire weekend was clearly due to routine pedigree questioning, processing and, more preponderantly, to lodging waiting the reopening the federal courts on Monday. Even the lapse of time between the theoretically earliest availability of a Magistrate, at 9:00 a.m., and SHAKEEL's interview, which commenced just before 2:00 p.m., is less than six hours—without taking into consideration practical circumstances such as that presentments before the Magistrate do not commence before the calendar call, which is begins on Mondays at approximately 10:30 a.m., is completed; that both defendants, to the best of my recollection and belief, were not released from the MCC until sometime after 10:00 a.m.; and that a good portion of the delay between then and presentment was caused by the defendants' being processed by the U.S. Marshal's and Pretrial Services.

Affidavit of Peter B. Sobol, sworn to on September 30, 1985, at p. 4. There is absolutely nothing to indicate that the DEA or the Marshal's Service spent 42 hours, or even four hours as the government suggests, processing Shakeel and taking pedigree information from him.

Shakeel had been confined in the MCC since Saturday evening. The government thus had an obligation to present Shakeel before a magistrate promptly on Monday morning. *See United States v. Rubio,* 709 F.2d 146, 154 (2d Cir.1983) ("... our discomfort increases in direct proportion to the length of 'necessary' prearraignment delay attributable to the unavailability of a judicial officer, even on weekends."); *United States v. Yong Bing-Gong,* 594 F.Supp. 248, 254 (N.D.N.Y.1984) (In light of a lengthy prearraignment delay, the arresting officers had no legitimate excuse for not arraigning defendant promptly on the next morning). The government's assertion that "a good portion of the delay between [10:00 a.m.] and presentment was caused by the defendants' being processed by the U.S. Marshal's and Pretrial Services" is not acceptable. It still fails to explain a belated 2:00 p.m. interview followed by a 3:00 p.m. arraignment. When Shakeel's processing had been completed he should have promptly been arraigned. Instead, he was subjected to a lengthy interrogation by the government.

The government, relying on *United States v. Rubio,* 709 F.2d 146 (2d Cir.1983), argues that the instant case does not warrant suppression. However, *Rubio* is distinguishable from the instant case. In *Rubio,* the Second Circuit affirmed a district court's denial of a motion to suppress statements because of an unreasonable pre-arraignment delay. The defendant was arrested at 1:00 p.m. on Saturday afternoon when no magistrate was available. According to the trial judge "[a]n unsuccessful attempt to locate a Magistrate was made." *United States v. Rubio,* 526 F.Supp. 171, 175 (S.D.N.Y.1981). The defendant in *Rubio* was interrogated by an AUSA on Monday morning shortly before the arraignment. The Court agreed with the trial judge's finding that "there was no purposeful postponement of arraignment, and no lengthy, hostile, or coercive interrogation which caused the appellant prejudice." 709 F.2d at 153. In the instant case there was a lengthy confinement, followed by a lengthy interrogation.

Although the Court stated that the government's failure to bring the defendant before a state or local judicial officer violated Rule 5(a) and section 3501(c), it determined that the defendant was not prejudiced by the delay. *Id.* at 154. The

Court made this determination, in part, because the defendant did not make a confession, but uttered an exculpatory statement. The Court found these statements did not implicate the appellant in any wrongdoing and did not cause prejudice to his defense. *Id.* This is not true in the instant case.

Although the Court found that the circumstances in *Rubio* did not warrant suppression of the defendant's statements, the Court stated: "... we announce our serious concern that lengthy delay could, under different circumstances, be used for unlawful and coercive interrogation, as well as deny a defendant the right to prompt arraignment." *Id.* This Court finds that "different circumstances" warranting suppression of defendant's statements exist in the instant action. Here, unlike in *Rubio*, there was no attempt by the government to locate a magistrate for the purposes of arraignment before very late on Monday. Moreover, Shakeel's statements were incriminatory, not exculpatory. The government has failed to offer an adequate explanation for the delay, and similarly failed to show that the delay was reasonable.

### CONCLUSION

Section 3501(c), as interpreted in *Perez*, provides district courts with the discretionary power to suppress statements whenever unreasonable pre-arraignment delay occurs. This Court, in exercising its sound discretion, finds that the 43 hour delay between Shakeel's arrest and arraignment was completely unreasonable for the reasons stated above. *See United States v. Yong Bing-Gong*, 594 F.Supp. 248, 254 (N.D.N.Y.1984) ("Absent a showing of circumstances warranting the exceedingly long *twenty hour* delay, the Court has little difficulty concluding that the arresting officers 'had no legitimate excuse for not arraigning [defendant] promptly,' and that therefore, all statements made by defendant during this period must be suppressed.") (emphasis added). In short, the government cannot ignore the command of Congress as expressed in 18 U.S.C. § 3501.

Defendant's motion to suppress the evidence seized in the search is DENIED. Defendant's motion to suppress the statements made at the pre-arraignment interview with AUSA Sobol is GRANTED.

SO ORDERED.